## McClelland v. Linton.

## Opinion delivered November 22, 1915.

1. FRAUD AND DECEIT—RECOVERY.—A.' undertook to organize a corporation to conduct an orchard business. B. paid A. $4,000, which A. agreed to invest in land, deeding the same to B., and when the corporation was put on a working basis, B. was to deed the property to the corporation and receive $4,000 worth of stock. *Held*, when A. invested only $2,750 in land, that B. could recover from him the sum of $1,250, nothing having been done towards putting the business into operation.

2. SALE OF STOCK—CONDITIONAL SALE.—The above transaction held not to constitute an unconditional subscription for stock in the corporation, and B. will not be treated as a stockholder so as to prevent him from holding A. accountable for the money paid over to him.

3. TRUSTS—ACCOUNTABILITY FOR FUNDS.—A. held to be an agent or trustee for B. for the purpose of purchasing the lands and having them conveyed to B. as security.

4. ACTIONS—TRANSFER TO LAW.—The action, as set out in paragraph one of the syllabus, having been brought in equity, *held*, it was not error for the chancellor to refuse to transfer the same to law.

5. TRUSTS—JURISDICTION OF LAW AND EQUITY—ACCOUNTING BY TRUSTEE.—Where the amount due from a trustee can only be ascertained by an accounting, the *cestui que trust* must resort to equity; otherwise the jurisdiction of the two courts is concurrent.

6. ATTACHMENT—TRUSTEE—ACTION ON CONTRACT.—Under the facts stated in the first paragraph of the syllabus, *held*, A. being a nonresident, an attachment would lie.

Appeal from Washington Chancery Court, *T. H. Humphreys,* Chancellor; affirmed.

*L. A. Palmer* and *J. W. Grabiel,* for appellants.

1. This is an action for deceit. The allegations are not sufficient to state a cause of action. To make McClelland liable for fraud his misrepresentations must have been false as to a past or present fact, material in nature, which operated to deceive, and which were relied upon. Any statements as to the future plans of profits of the Company were immaterial and if false, they were not fraudulent. 1 Cook on Corp. 292; Story Eq. § 193; 116 Mo. 313; 91 Ark. 324; 95 *Id.* 131; 83 *Id.* 403; 100 *Id.* 144.

2. Delay in the enterprise or abandonment cannot be set up. 40 Pa. St. 237; 29 La. 579; N. Y. 454; 47 Oh. St. 302; 80 Pa. St. 31; 20 Ark. 204, 443; 97 *Id.* 248.

3. The appellees were stockholders in the corporation. There is no testimony that the Palmers ever received any money for stock, or converted same. 1 Cook on Corp. 157-9, 193; 65 Minn. 324.

4. There was no fraud inducing the subscription. But if any it was on the corporation. The burden was on plaintiffs. Harvey on Rights of Min. Stockholders, 35-37. The corporation was not a party to the suit.

5. No attachment can issue in a tort. Kirby's Dig. § 344.

6. McClelland's agreement to bind the corporation is not binding. 96 Ark. 5; 91 U. S. 61; 96 Ark. 291; 97 *Id.* 254; 20 Cyc. 19.

7. It was error to overrule the motion to transfer. This was a plain suit at law.

*Fred S. Wham* and *H. S. Pearson,* for appellees.

1. The suit was properly brought. This was a conditional subscription for stock dependent upon the performance of a condition precedent. This condition was never performed, and appellees did not become shareholders and could not be compelled to turn the lands over to the company. Clark on Corp. p. 296; 24 Md. 563; 26 Atl. 113; 38 Ill. 215; 8 S. W. 842; 24 N. E. 882; 2 Thompson on Corp. § 1332.

2. Only $2,750.00 was used in the purchase of lands. Appellants are clearly liable for the $1,250.00. Palmer was not entitled to any profit.

3. An equitable cause of action was stated and there was no error in refusing to transfer.

4. There was a misjoinder of parties. 90 Ark. 484; 84 *Id.* 556; 88 *Id.* 128; 86 *Id.* 138; 83 *Id.* 290; 145 U. S. 285.

5. McClelland was personally liable. 22 Ark. 517; 60 *Id.* 66; 48 *Id.* 188; 2 *Id.* 338; 87 *Id.* 434; 92 *Id.* 535; 3 Am. & Eng. Ann. Cas. 217.

6. The attachment was properly sustained. The injury resulted from breach of contract. 30 S. E. 968; 8

N. Y. Supr. Ct. 45; 44 Pac. 281; 32 N. W. 43; 21 S. W. 291; 62 Ark. 326; 24 Oh. St. 481.

7. The findings of the chancellor are not against the preponderance of the evidence and they should be sustained. 68 Ark. 314; 71 *Id.* 605; 68 *Id.* 134; 72 *Id.* 67; 67 *Id.* 200.

McCulloch, C. J. Appellant, F. C. McClelland, and certain other persons associated with him undertook to promote and organize a corporation for the purpose of developing fruit orchards in the Ozark mountain district in this State, and did in fact organize such a corporation under the laws of the State of South Dakota. A board of directors and officers were elected and an office was opened in the city of Chicago for the purpose of selling stock, but it does not appear that any sales of stock were made for cash. Options were secured by those interested on land in Washington County, Arkansas. Appellant was acquainted with appellees, John C. Linton and H. C. Lemmerman in South Dakota and enlisted their interest in the enterprise referred to above. They finally came to Arkansas and decided to invest as much as $4,000.

The testimony adduced in this action by appellees tends to show that when they came to Arkansas for the purpose of looking into the proposition they were met by appellant and other parties and shown over the locality, and that the plan for carrying out the scheme was fully outlined to them. It was a part of the plan that for every thousand dollars of stock subscribed the company would, as a bonus to the subscriber, give him the use for five years of five acres of apple orchard, to be cultivated and cared for by the corporation during the term. The testimony tends to show further that it was represented to them by appellant and his associates that they had options on certain lands which were about to expire, and that money was needed for immediate purposes in order to buy the lands before the expiration of the options. The proposition was made to appellees, so they testified, that if they would agree to take stock, and would advance the price therefor, lands on which options were held would be

purchased and the title conveyed to appellees as security for the money so advanced; and that when enough of the stock should be sold to put the corporation on a working basis, appellees would turn the lands over to the corporation and take stock. Appellees accepted the proposition and agreed to advance $4,000 to be taken in stock, and said sum was paid over by them to appellant, McClelland, who purchased three tracts of land and took conveyances from the respective owners. In the deeds which were executed by the grantors the name of the grantee was in each instance omitted and a blank space left for the insertion of the name. The deeds were duly acknowledged by the grantors and their wives and they were forwarded to appellees at their homes in South Dakota. Subsequently, the names of appellees were inserted in the conveyances by agreement between them and appellant and the deeds were forwarded to Washington County and placed of record. The transaction between appellant and appellees occurred in the month of June, 1911, and nothing further transpired between them except written correspondence. The corporation stock was never delivered to appellees, nor did they ever turn over the lands, to which they held title, to said corporation. The corporation was organized, as before stated, in the year 1911, prior to said transaction between these parties, but it does not appear from the testimony that it has ever been put on a working basis or that anything has been done except in the way of an effort to sell stock. In other words, it has never reached the point of doing business according to its corporate authority.

The present action is one instituted by appellees against appellant in the chancery court of Washington County, in which it is alleged that the said sum of $4,000 was by appellees placed in the hands of appellant as their agent and trustee to use the same only for the purchase of lands which were to be deeded to appellees, and that appellant had only used the sum of $2,750 for that purpose, but had conspired with certain other parties, namely, L. A. Palmer, Mrs. L. A. Palmer and L. G. Pal-

mer, to deceive and defraud the appellees and to convert
the remainder of said money to their own use and pur-
poses.   The complaint contains a further allegation that
appellant and the other defendants made false represen-
tations to appellees to induce them to pay over said
money to the effect that said parties owned and controlled
large tracts of land to be used in the establishment of
said orchard, and that they would finance and carry on
the work until all of the stock had been sold at par.   The
original owners of said lands were made parties defend-
ant and the prayer of the complaint was that a lien be de-
clared in favor of appellees on said lands and that the
same be sold, and that if the proceeds of sale prove insuf-
ficient to reimburse appellees for the amount they had
paid over to appellant that they have judgment against
him for the unsatisfied balance.   Appellant McClelland
filed an answer, in which he denied all charges of fraud
and misrepresentation and alleged that appellees agreed
to purchase $4,000 of the capital stock of said corpora-
tion; that said money was paid over to him as the repre-
sentative of said corporation in payment of the price of
the stock, and that the whole of said sum was used in the
purchase of said three tracts of land which were deeded
to appellees.   Appellant also filed a motion to transfer
the cause to the circuit court.   On a final hearing the chan-
cellor found that there had been no false representations
made by appellant and his associates to appellees, but
that appellant had only paid the sum of $2,750 for the
lands which were procured and conveyed to appellees, and
rendered a decree against him in favor of appellees for
the balance of $1,250 with interest.   An attachment had
been issued against appellant's lands and the court sus-
tained the attachment.   Appellant McClelland prayed an
appeal to this court from that part of the decree against
him, and appellees prayed an appeal from so much of the
decree as denied relief against the other defendants.

(1)   All of the parties interested in the litigation tes-
tified at considerable length, and there is a voluminous
record.   It will be unnecessary to detail said testimony

but it is sufficient to say that we have carefully considered it and we are of the opinion that the chancellor's finding, that only $2,750 of the money paid over by appellees was used in the purchase of land and that the balance was wrongfully converted by appellant to other uses, is not against the preponderance of the testimony.   The testimony warrants the conclusion that appellant purchased three tracts of land, designated in the record as the Mart land, for which he paid only the sum of $600, and the Whitener land for which he paid $1,400, and the Smith land for which he paid $750.   The contention of appellant is that the balance was paid to defendant, Louis G. Palmer, who had an option on the land, but we think there is enough testimony to justify the chancellor in finding that Palmer was not entitled to anything on his said option and was paid a commission by the purchasers out of the respective purchase prices paid to them.

(2-3)   The testimony also warranted the finding that the transaction between appellees and McClelland did not constitute an unconditional subscription for stock in the corporation.   The evidence shows that the money was advanced by appellees to McClelland for the purpose of buying land, the title to which was to be taken in appellees and held by them as security for their money until such time as the corporation should be put on a working basis, when they would turn it over to the corporation and take stock.   It was nothing more than a conditional agreement to take stock in the future, and as it is not shown that the conditions have been performed appellees can not, at least in this action, be treated as stockholders so as to prevent them from holding appellant accountable for the money which they had paid over to him on those conditions.   Appellant was the agent and trustee of appellees for the purpose of purchasing the lands and having the same conveyed to them as security.   Appellant did not receive the money as a representative of the corporation, but received it as the representative of appellees for the specific purpose of purchasing lands, the title to be taken as above stated.   The corporation itself is not a party to the action

and it is not incumbent upon us to decide at this time time what the rights of the corporation would be if it should assert the right to have a performance of the contract which the testimony shows was made by appellant McClelland concerning the purchase of the stock. The question concerning those rights can only be decided in a case in which appellees and the corporation are all parties. So far, however, as concerns the rights of appellees and appellant McClelland, the testimony is sufficient to show that the latter accepted money in trust which has been appropriated to another use than that intended, and that appellant is responsible to appellees for the amount so misappropriated.

(4-5) It is earnestly insisted that this is an action for tort, and that appellant's motion to transfer to the law court should have been granted. It is not correct to say that this must necessarily be treated as an action sounding in tort. It is true that the pleadings, taken as a whole, leave the matter somewhat in doubt as to the exact nature of the action, but when considered in the light of the testimony adduced in the case it is clear that the action was presented to the court as one in which appellees were seeking to hold appellant accountable for the funds which he received as their agent and misappropriated. That was a matter of equitable cognizance. The rule is that courts of equity have inherent jurisdiction over all kinds of trusts and trustees, independently of statute, whether the trust arises by express agreement or results by implication of law. *Russell* v. *Tate,* 52 Ark. 541; *Spradling* v. *Spradling,* 101 Ark. 451. Sometimes that jurisdiction is concurrent with the courts of law. The authorities all seem to sustain the rule that where the amount due from the trustee can only be ascertained by an accounting, the *cestui que trust* must resort to equity; otherwise the jurisdiction of the two courts is concurrent, 22 Enc. of Pleadings & Practice, p. 137; *Tateum* v. *Ross,* 150 Mass. 440. The status of this case seems to be such that an accounting was necessary so as to give the court of equity exclusive jurisdiction; but whether that be true

or not, the jurisdiction is either exclusive or concurrent and is complete, therefore the court did not err in refusing to transfer to the law court.

(6) The next contention is that the court erred in sustaining the attachment. This contention is based upon the idea that the action is one sounding in tort, and that there can be no attachment for the reason that our statute provides that an attachment shall not be granted on the ground that the defendant is a nonresident of this State "for any claim other than a debt or demand arising upon contract." Kirby's Digest, § 344. Appellant was a nonresident of the State, but this is not an action sounding in tort as contended.

In *Messinger* v. *Dunham,* 62 Ark. 326, this court speaking on this subject through Judge RIDDICK, said: "This restriction of the right to attach to debts and demands arising upon contract is for the purpose of excluding actions for torts and actions where 'the contract relations between the parties do not furnish a basis upon which the measure of liability may be ascertained.' * * * The action in this case was founded upon a demand against the defendant for refusing to perform a contract which he had made with the plaintiff. This demand arose out of, and the measure of damages in the action depended upon, and was controlled by, the contract. The word 'demand' is broader than the word 'debt;' and although the damages claimed were unliquidated, still we are of the opinion that the claim was 'a demand arising upon contract,' within the meaning of the statute."

We think, therefore, that the court was correct in holding that an attachment will lie in an action of this kind, and as defendant was shown to have been a nonresident it was proper to sustain the attachment. This disposes of all the questions arising on the appeal of Mc-Clelland.

As to the appeal of the appellees from that part of the decree which refused them relief against the other defendants, we are of the opinion that there was not enough testimony to justify a finding that those defendants con-

spired with McClelland for the purpose of misappropriating the fund. At least we can not say that the finding of the chancellor is not in accord with the preponderance of the evidence.

The decree, as a whole, is therefore affirmed.