GORDON *v.* REEVES.

Opinion delivered December 8, 1924.

1.  COURTS—ADDITIONAL CHANCELLOR.—Acts 1923, No. 372, providing for an additional chancellor for the seventh chancery circuit and for a division of courts in such circuit into two divisions, did not create a new court, but merely a division of the regular court with another chancellor to hold it.

2.  COURTS—FAILURE TO OPEN COURT AT BEGINNING OF TERM.—Failure to open court at one of two divisions of the seventh chancery court created by Acts 1923, No. 372, at the beginning of the new term fixed by Special Acts 1919, No. 10, did not prevent holding the court at a later date, in view of § 8 of the former act providing that the court of such division shall be open for the transaction of business at all times.

3.  COURTS—REGULATION OF TERMS OF COURT.—There is no constitutional restriction upon the power of the Legislature to regulate terms of court, except that one term must be held in the county during the year.

4.  APPEAL AND ERROR—EXCHANGE OF JUDGES—PRESUMPTION.—Where the opening order of court recited that court was opened and was being held by a chancellor on exchange of circuits, it will be presumed, where the question of regularity was not raised below, that the statute relating to exchange of judges (Crawford & Moses' Dig., §§ 2204, 2224) was complied with, notwithstanding the failure of the record to set out an agreement for exchange of circuits.

5.  APPEAL AND ERROR—AFFIRMANCE NOTWITHSTANDING ERRONEOUS REASON.—A correct decree will be affirmed, regardless of the reasons on which it is based.

6.  VENDOR AND PURCHASER—RIGHT TO REPURCHASE—WAIVER OF FORFEITURE.—Where a creditor, on taking a deed from his debtor, gave him a right within a stipulated time to repurchase the land on payment of the debt, and permitted him to remain in possession after that time and accepted the proceeds of his crop, applying same to his account and charging the taxes to the debtor, he will be held to have waived the stipulated time for repurchase.

7.  APPEAL AND ERROR—EFFECT OF FAILURE TO CROSS-APPEAL.—Sufficiency of evidence to sustain a finding in favor of appellants will not be considered where appellees did not prosecute a cross-appeal.

Appeal from Ouachita Chancery Court, Second Division; *John E. Martineau,* Chancellor on exchange; affirmed.

*Sam T. & Tom Poe,* and *Smead & Meek,* for appellant; *Chas H. Blish,* of counsel.

An absolute deed delivered in payment of a debt is not converted into a mortgage merely because the grantee therein gives a contemporaneous stipulation binding him to reconvey on being reimbursed, within an agreed period, an amount equal to the debt and interest thereon. Jones on Mortgages, 7th ed., vol. 1, p. 342, par. 265, and p. 349, par. 267; 75 Ark. 551; 27 Cyc. 998; *Id.* 1010. The legal presumption is always against the commission of fraud, which must be affirmatively proved. 27 C. J. 44. The deed being absolute in form, the burden was on appellee to show that it was a mortgage. 105 Ark. 314; 27 Cyc. 1017, 1018. To justify a court in holding that a deed absolute in form was intended as a mortgage, the proof to that effect must be clear, consistent, unequivocal, satisfactory, and convincing. 27 Cyc., p. 1025; *Id.,* p. 1024; Blue Book on Evidence (Jones), vol. 1, par. 50, p. 247; 163 Ark. 157. The decree rendered was not warranted by the pleadings. No relief can be granted under a general prayer which is not consistent with the main theory and purpose of the bill and supported by its allegations. 21 C. J. 682; 90 Ark. 241; 7 Ark. 530; 7 Ark. 516; 13 Ark. 187; 30 Ark. 628. The amendment to the complaint alone stated a cause of action, and its effect was to withdraw the facts and issues raised in the original complaint.

Courts take judicial cognizance of terms of courts. 34 Ark. 576. It was not the intention of the Legislature by act 372, Acts 1923, p. 333, to create a new court, but a branch of the established court. A perpetual court was not intended, as the idea is excluded by act 7, § 12 of the Constitution. By law a new term of court was to commence on June 18. An adjournment was taken from June 15 to June 25, a period within the next term, and the regular term commencing June 18 was never formally opened, and consequently had lapsed. C. & M. Dig., § 2209-10. The action of Judge Martineau on June 27 could not therefore, under the circumstances,

be sustained as the act of a *de facto* judge.  71 Ark. 310.  No written agreement for exchange of circuits being on file on or prior to the date of the trial of this cause, Judge Martineau was without authority to try the case.  Section 2224, C. & M. Digest.  All evidence showing a verbal agreement for exchange of circuits is incompetent.  Authority could be proved only by the record of the statutory exchange agreement.  See the following cases on authority of special judges, etc: 72 Ark. 320; 52 Ark. 113; 70 Ark. 497; 79 Ark. 248; 19 Ark. 96; 19 Ark. 100; 91 Ark. 582; 118 Ark. 310; 125 Pac. 609; 6 S. E. 700; 21 Fla. 346; 67 Ga. 246; 1 S. E. 876; 33 Pa. 338; 65 N. C. 511; 66 Ga. 715; 40 Ala. 629; 6 S. W. 40; 17 Ind. 67; 53 Mo. 88; 78 S. W. 110; 141 Ark. 201; 6 Ark. 227.  Appellant is not estopped to raise here the question of the authority of Judge Martineau to try the case, as this would be equivalent to holding that consent imparts judicial power.  45 Ark. 478; 39 Ark. 254; 50 Ark. 344; 145 Ark. 604; 79 Ark. 284.  It is elementary that the court cannot by *nunc pro tunc* make the record speak what it should have spoken.  92 Ark. 299; 87 Ark. 439; 118 Ark. 310.

*D. D. Glover* and *D. M. Halbert,* for appellee.

The fact that the account has never been balanced shows that it is an existing debt and that the intention of the parties was to secure the debt by giving a mortgage which was written in the form of a deed.  75 Ark. 551.  The fraud practiced in securing the instrument was sufficient to overcome the presumption that the paper was intended to be a deed, instead of a mortgage. 159 Ark. 257.

McCULLOCH, C. J.  Adam Reeves, one of the appellees, was, on March 23, 1916, the owner in fee simple of the tract of land in controversy, which contains about seventy-eight acres, and is situated in Ouachita County, Arkansas.  On that date he was indebted to the estate of George L. Ritchie, deceased, in the sum of $347.60 on open account, and he executed to appellant Gordon, as executor of the estate of Ritchie, a deed conveying said

land in fee simple for the consideration of the extinguishment of said debt to the Ritchie estate. On the same day, and contemporaneously with the execution of said deed, Gordon executed to appellee Reeves a written instrument whereby he agreed to give said appellee the right to repurchase said land within two years from that date on payment of the sum of $347.60 with interest from date, and that, upon payment of said sum, he would execute to said appellee a deed reconveying said land to him. This instrument was delivered by Gordon to Reeves, and the latter kept it thereafter in his possession. Adam Reeves remained in possession of the land and cultivated the same, and so continued until the present time.

This action was instituted by appellee Adam Reeves and his wife against appellant Gordon, and others claiming an interest, in December, 1922, alleging that the deed executed by Reeves to appellant Gordon was intended as a mortgage and praying an accounting of the amount due, and a decree as to the rights of redemption. Appellees alleged in their complaint that they are ignorant persons, and that they were induced to execute said deed under the false and fraudulent misrepresentations made to them that it was a mortgage; that the written instrument executed by appellant Gordon and delivered to them was represented to be a copy of the mortgage, and that they did not receive any information to the contrary, being permitted to remain unmolested in possession of the land, until some time during the year 1922, when a vistor at their home looked at the paper and called their attention to the fact that it was not a copy of a mortgage, but that it was a contract of different import. Appellee also alleged that, after the execution of the deed in March, 1916, they continued in possession, as before stated, and that, during the year 1916, they harvested two and a half bales of cotton of the market value of $375, and in the year 1917 harvested one and one-half bales of cotton of the market value of $225, and in the year 1918 harvested a bale of cotton with a market value

of $125, all of which was delivered to appellant Gordon to be credited on the supposed mortgage.

On the trial of the issues, appellees testified themselves and introduced other witnesses tending to support the allegations of their complaint that they were led to believe that the deed executed by them was a mortgage, that they did not receive information to the contrary until the year 1922, and that they had delivered the quantity of cotton of the value mentioned above to appellant Gordon during the years mentioned.

Appellants introduced testimony tending to show that there was no misrepresentation concerning the character of the instruments, and appellant Gordon also introduced his accounts showing supplies furnished to appellees during the years 1916, 1917, 1918 and 1919, and the amount of cotton delivered for credit of the proceeds on the account. This account shows that only one bale of cotton was delivered in the year 1916, one bale in 1917, together with a small cash payment, and a bale in the spring of 1919 of the crop of 1918.

On the trial of the cause the court found that the deed was intended as a mortgage, having been given to secure a debt due the estate of Ritchie, and entered a decree declaring the same to be, in effect, a mortgage, and permitting appellees to redeem therefrom by paying the sum of $347.60 with interest, which was declared to be a lien upon the land. The appellees have not appealed or cross-appealed.

It is contended, in the first place, that the decree is void, and should be reversed for the reason that the court was not in session on the day the decree was rendered and that there was no authority for the court to sit on that day. This contention involves an interpretation of the statutes in regard to holding courts in Ouachita County.

The terms of the chancery court of Ouachita County were fixed by act No. 10 of the session of 1919 to begin quarterly on the third Mondays in March, June, September and December. The General Assembly of 1923, at the

regular session, enacted a statute (act No. 372) providing for an additional chancellor for the seventh chancery circuit, which includes the counties of Ouachita and. Union. The statute provides for the division of these courts in Ouachita and Union counties into two divisions, to be known as the first and second divisions, and provides for the appointment of another chancellor to hold the second division of the court. Section 8 of the statute reads as follows: ''For the purpose of expediting business in said second division of the chancery court of Union and Ouachita counties, the court of said division shall be always open for the transaction of business, and may sit in either county and may hear and try causes at the same time and in the same county where the first division may be in session.'' The present case was heard and the decree rendered on June 27, 1923. It appears from the record before us that Honorable George M. LeCroy, the chancellor of the second division, held court on June 15 and adjourned over to June 25, which was after the commencement of the June term according to the original statutes, which began on June 18. On June 25 a special chancellor was elected to hold the court for that day, and adjourned over to June 27, when the court was opened by Honorable John E. Martineau, chancellor of the first circuit, on exchange with Chancellor LeCroy. The court was not opened on June 18 nor on any day thereafter until June 25, when, as before stated, the court was opened and a special chancellor was elected.

The contention of counsel for appellants is that there was no intention on the part of the lawmakers to create a new chancery court, but merely to provide for a division of the regular court by the appointment of a chancellor to hold the second division, that the terms of court as established by the prior statute were not repealed or affected by the new statute authorizing holding of court at any time, and that the term necessarily lapsed when the day came for the holding of the new term. The further contention is that if the court was not opened for the new term within the three days specified by the

general statute, there was no authority for holding the court on the day on which this decree was rendered.

We are unable to agree with the whole of the contention of learned counsel. They are correct, we think, in saying that there was no new court created, but merely a division of the regular court, with another chancellor to hold it. But we cannot agree with their contention that the failure to open court at the beginning of the new term prevented the holding of court at any later date pursuant to the provisions of the statute creating the division and authorizing the holding of the court at all times. The statute creating the terms of the court applies to both divisions, and one term ends with the beginning of the new term, so that all judgments become final, but it was within the power of the Legislature, notwithstanding the creation of the regular term, to provide for the holding of the court at any time. There is no constitutional restriction upon the power of the Legislature to regulate terms of court except that a term of court must be held in each county during the year. *Parker* v. *Sanders,* 46 Ark. 229. We hold therefore that the court was in session on the day that this case was heard and the decree rendered.

It is next contended that the decree is void for the reason that the record does not show that the agreement between Chancellor LeCroy and Chancellor Martineau for exchange was in writing and entered on the record as provided by statute.

The statute (Crawford & Moses' Digest, § 2224) provides that judges of the circuit court may, by agreement, exchange circuits and hold court for each other for such length of time as may seem practicable, etc., and that "such agreement shall be signed by the judges so agreeing, and entered on the record of the court or courts so to be held." Another statute (Crawford & Moses' Digest, § 2204) provides that chancellors "may exchange and hold court for each other as in the case of circuit judges." The record shows that, at the time the appeal was perfected, the opening order of the court

recited that "court met pursuant to adjournment, present and presiding Honorable John E. Martineau, Chancellor of the First Chancery Court District of Arkansas, and the following proceedings were had, to-wit." There was a blank space in the record, which has been shown in an ancillary proceeding to have been left for the time being as a space in which the agreement of the two chancellors was to be entered, and there has been brought up on certiorari an additional record showing a *nunc pro tunc* order made by the regular chancellor after this appeal had been perfected, entering the agreement *nunc pro tunc*. An appeal has also been taken by the appellants from that order.

Without taking into account the effect, if any, which might be given to the *nunc pro tunc* order, and disregarding that order altogether, we are of the opinion that the decree cannot be avoided on the ground that there is no affirmative showing in the record of the entry of a written agreement of the chancellors to exchange. The statute authorizing the election of a special judge, in the absence or disqualification of the regular judge, provides that such election shall be held by the clerk and the members of the bar, and that "the proceedings shall be entered at large upon the record where a special judge is elected." Crawford & Moses' Digest, § 2226. Counsel for appellants rely upon decisions of this court holding that, in case of an election of a special judge, the record must affirmatively show compliance with the statutory requirements, otherwise the judgment is void for want of jurisdiction. *Dansby* v. *Beard*, 39 Ark. 254; *Gaither* v. *Wasson*, 42 Ark. 126; *Wall* v. *Looney*, 52 Ark. 113; *Arkadelphia Lbr. Co.* v. *Asman*, 72 Ark. 320, 79 Ark. 248. The basis of those decisions was the well established rule that judicial power cannot be conferred by consent of parties in the absence of statutory authority, and that all the statutory requisites in regard to conferring power upon special judges must be complied with, otherwise the proceedings are void, and, in the absence of a showing of such compliance, no presumption will be indulged in favor of the record.

That is not a proper basis, however, for testing the record of a trial before a judge on exchange of circuits, for a judge or chancellor on exchange of circuits is already a sworn officer of the law and clothed with judicial power, and the presumption that every officer has complied with the law in the performance of his duties, until the contrary appears, should be applied on appeal from a judgment rendered by a judge or chancellor on exchange of circuits. *McCamey* v. *Wright,* 96 Ark. 477; *Cotton* v. *White,* 131 Ark. 273; *Wallace* v. *Hill,* 135 Ark. 353. That presumption is conclusive unless it affirmatively appears from the record that there was no proper exchange of circuits and that the question of irregularity was raised in the proceedings below. That is the rule that was applied by this court in disposing of a challenge made here, for the first time, of the disqualification of a trial judge and the election of a special judge, and we held that the question could not be raised here for the first time. *Blagg* v. *Fry,* 105 Ark. 356. See also *Fernwood Mining Co.* v. *Pluna,* 136 Ark. 107. There was no question raised below as to the regularity of the agreement for exchange of circuits /between Chancellor LeCroy and Chancellor Martineau, and the authority of the latter to hold the court cannot be questioned here for the first time, the presumption being indulged conclusively that the exchange was regular and in compliance with the statute. The opening order of the court recites the fact that the court was opened and was being held by Chancellor Martineau on exchange, and this is sufficient to raise the presumption that he was holding court rightfully under an agreement with the regular chancellor.

This brings us to a consideration of the merits of the litigation, and we are of the opinion that the court reached the right conclusion—that is to say, a result as favorable to appellants as the testimony warranted. It is immaterial whether or not the decree was based upon proper grounds, for, if it was a correct decree, it should be affirmed. Without discussing the grounds upon which the decree is based, we are of the opinion that it was

correct for the reason that, according to the undisputed proof, Gordon, the holder of the legal title, who executed the contract with appellees for a resale of the property, waived the time limit for exercising the right of repurchase, even if time be treated as of the essence of the contract. He permitted appellees to remain in possession of the property under the contract for repurchase and has never demanded possession; he accepted the proceeds of all the crops raised on the place for three years and applied the same on the running account of appellees, and also charged the taxes on the land to appellees on that account. This conduct on his part was a recognition of appellees' rightful possession of the land under the contract, which was the sole evidence and limit of their rights in the premises, and he is therefore deemed to have waived the time specified for exercising the right of repurchase. *Banks* v. *Bowman*, 83 Ark. 524.

There is a sharp conflict in the testimony as to the amount and market value of the cotton delivered by appellees to appellant Gordon. The testimony of appellees, which is corroborated by the testimony of other witnesses, tended to show that the value of the cotton delivered during the years 1916, 1917 and 1918 was more than sufficient to pay off the original debt as well as the account for supplies, but this is contradicted by the testimony of appellant Gordon and another witness, and, since the finding of the chancellor in decreeing a lien on the land for the amount of the original debt is in favor of appellants, and no appeal or cross-appeal has been prosecuted by appellees, we need not pass upon the weight of the evidence on that issue.

It follows from what we have said that the decree should be affirmed, and it is so ordered.

### CONCURRING OPINION.

HART, J. I agree to the result in the majority opinion, but dissent from that part of the opinion which, by implication at least, overrules our former decisions to the effect that it is essential that the objection to

the jurisdiction of a special judge should be made in the court in which he assumed to have jurisdiction.

In the case of *Caldwell* v. *Bell & Graham,* 3 Ark. 419, it was held that, where the record shows that the judge who presided upon the trial was specially commissioned for that purpose, and nowhere contained any statement or presumption by which his power or authority can be questioned, the Supreme Court is bound to presume that he acted in obedience to his authority.

This principle was reaffirmed in *Adams* v. *State,* 11 Ark. 466, in a case where there was an exchange of circuits by two judges.

In *Sweeptzer* v. *Gaines,* 19 Ark. 96, it was held that, in order to present any question in the appellate court, as to the right of a special judge to preside in the trial of a cause, his power must be questioned in the court below, and the grounds of the objection stated in the record.

Again, in *White* v. *Reagan,* 25 Ark. 622, the court said:

"It is the well-settled rule of this court, which we shall not disturb, that a party may question the authority of an individual to try his case as a special judge; and, if the objection is overruled, the grounds of the objection, and the authority of the judge, may be spread upon the record, by a bill of exceptions, in order to enable this court to determine his right to exercise the powers of a special judge in the case. *Rives* v. *Pettit,* 4 Ark. 582; *Adams* v. *State,* 11 Ark. 466; *Sweeptzer* v. *Gaines,* 19 Ark. 96."

The doctrine of those cases was expressly reaffirmed in *Blagg* v. *Fry,* 105 Ark. 356, and *Fernwood Mining Co.* v. *Pluna,* 136 Ark. 107.

There is a seeming departure from this rule in the announcement of the court in *Wall* v. *Looney,* 52 Ark. 113. The facts upon which the ruling of the court is based are not stated, but, when we consider the cases cited in the brief, we do not think there was any departure from the rule. *Dansby* v. *Beard,* 39 Ark. 254, and

*Gaither* v. *Wasson,* 42 Ark. 126, are cited and apparently followed. In both of these cases the infirmity was shown on the face of the record, and the court properly reversed the judgment on that account.

The case of *Arkadelphia Lumber Co.* v. *Asman,* 72 Ark. 320, has no bearing either way. In that case the record did not show that a special judge presided in the trial, and the appellate court indulged the presumption that the regular judge presided.

The result of our former decisions, to my mind, is that, in case of a special judge, or in case of a judge in the exchange of circuits, the record should show the requisite facts; but, in the absence of such showing upon the face of the record, or by a bill of exceptions showing that the objection was made in the court below, the legal presumption is that all the requisitions of the law have been complied with. A court of record, whether presided over by a regular judge, or by a special judge, or a substituted judge in the exchange of circuits, is a court of superior jurisdiction, and all legal presumptions in favor of its jurisdiction will be presumed. Every person improperly subjected to the jurisdiction of such court, in the case of a special judge or a judge in the exchange of circuits, may relieve himself by proper objection to the jurisdiction; but he cannot subject the public to the expense and trouble of a trial on the merits, and then be allowed, for the first time, in this court, to demand a hearing on the jurisdictional question after he has proved to be the loser in speculating on the chances of such a trial.