## TANDY *v.* SMITH.

### Opinion delivered April 25, 1927.

1. CURTESY—VESTED ESTATE.—A husband's curtesy in his deceased wife's land vests upon her death.

2. DESCENT AND DISTRIBUTION—FATHER AS HEIR OF SON DYING CHILD-LESS.—Where a son died leaving lands as a new acquisition and no children or creditors, his father, as next kin, and his widow each took a half interest therein in fee, under Crawford & Moses' Dig., §§ 3480, 3536.

3. FAMILY SETTLEMENT—VALIDITY.—Where a widow and her father-in-law each had vested interests in her deceased husband's real estate, a family settlement whereby each of them executed a quitclaim to the other of an interest in such estate was binding, being supported by mutual consideration.

4. DOWER—CONVEYANCE BY WIDOW BEFORE ASSIGNMENT.—Conveyance by a widow of a dower right in her husband's property before assignment of dower, though unenforceable at law, is enforceable in equity.

5. DEEDS—RECITAL OF CONSIDERATION.—Where a deed recited the payment of a consideration, the grantor will not be heard to question the validity of the deed for want of a consideration.

Appeal from Mississippi Chancery Court, Osceola District; *J. M. Futrell,* Chancellor; affirmed.

*Gladish & Taylor,* for appellant.

*A. F. Barham,* for appellee.

SMITH, J. Harry Tandy, who died November 30, 1918, owned, at the time of his death, two small tracts of land and two lots in the town of Osceola. He inherited the lands from his mother, but he had bought the town lots. The lots were adjacent, but had been purchased at different times. The first lot purchased had been paid for, but most of the purchase money for the second lot was unpaid at the time of Harry Tandy's death, and was evidenced by two notes payable to his grantor for $164 each. Harry Tandy left no children, but was survived by his father, M. C. Tandy, and his wife, Rosie Tandy, who continued to live on the town lots, which comprised her husband's homestead at the time of his death.

Rosie Tandy and M. C. Tandy conceived the idea of dividing the estate of Harry Tandy, and they evidenced

the agreement reached to that effect by executing deeds to each other. The deed from Rosie Tandy to M. C. Tandy, in addition to a consideration of one dollar, recited the fact that it was executed for the purpose of effecting a division of the estate of Harry Tandy between his widow and his father, and conveyed to M. C. Tandy the following property, to-wit: A tract of land known as the Harry Tandy woodsland, in the south half of the northeast quarter of section 6, township 12 north, range 10 east. The deed from M. C. Tandy to Rosie Tandy also recited a consideration of one dollar paid, and that it was "executed for the purpose of dividing the estate of Harry Tandy between M. C. Tandy, father of Harry Tandy, and Rosie Tandy, widow of Harry Tandy," and that, in consideration of the execution of the deed to M. C. Tandy for the land in section 6, he thereby conveyed to Rosie Tandy a fourteen-acre tract of land in the southeast quarter of the southwest quarter of section 5, township 12 north, range 10 east, known as the Harry Tandy cleared land, and also the Harry Tandy homestead, consisting of the two lots in Osceola. These deeds were executed and delivered on November 1, 1919.

Harry Tandy appears to have owed no debts at the time of his death, except the unpaid purchase money due on one of the town lots, and, after the execution of the deeds described above, Rosie Tandy paid this indebtedness and discharged the lien reserved in the deed to the lots to secure this purchase money.

Rosie Tandy died testate March 13, 1925, and, by her last will and testament, devised all of her property to her sister, Marie Smith. M. C. Tandy brought this suit against Marie Smith to cancel the deed executed by him to Rosie Tandy and to have partition of the property, and, as grounds therefor, alleged that the execution of the deed from him had been procured by fraud, and that he had no interest in the property conveyed at the time of the execution of the deed. The complaint was dismissed as being without equity, and this appeal is from that decree. But little testimony was offered in support of the

allegation of fraud, and the court below found the fact to be that there was no fraud, and that allegation is not here relied upon. But it is insisted, upon behalf of appellant, that his deed conveyed nothing, for the reason that he had no interest subject to conveyance, that he had a mere contingent remainder interest, which did not pass as an after-acquired title under his deed when this contingent remainder vested upon the death of the widow of his son.

The deeds were quitclaim deeds, and appellant cites cases in which it was held that, where one executes a quitclaim deed, he conveys only such interest as he then owns, and that another title subsequently acquired does not pass as an after-acquired title, under § 1498, C. & M. Digest. This section provides: "If any person shall convey any real estate by deed, purporting to convey the same in fee simple absolute, or any less estate, and shall not at the time of such conveyance have the legal estate in such lands, but shall afterwards acquire the same, the legal or equitable estate afterwards acquired shall immediately pass to the grantee, and such conveyance shall be as valid as if such legal or equitable estate had been in the grantor at the time of the conveyance."

The contention that appellant had no interest which he could convey may be disposed of by saying that appellant mistakes the interest which he owned in the property conveyed. No debts were probated against the estate of Harry Tandy, and the only debt he owed was paid by his widow. He had no children. Harry Tandy owned land, which was an ancestral estate, and town lots, which were a new acquisition, and constituted his homestead and became the homestead of his wife after his death. Section 5523, C. & M. Digest. Appellant had an estate by the curtesy in the lands which Harry Tandy had inherited from his mother, appellant's wife. This estate was in no manner contingent. The town lots were a new acquisition, and, as there were no children or creditors, the widow was endowed of one-half of this property, under § 3536, C. & M. Digest. M. C. Tandy, as the heir

of his son, took a life estate to the other half of the lots, which, upon his death, descended in remainder to the collateral kindred of his son, Harry Tandy. Section 3480, C. & M. Digest. His right to the possession of this half as life tenant was subject to the homestead rights of Rosie Tandy, the widow, but this postponement of the right to possession did not make his interest a contingent remainder, as appellant contends. His rights were vested, and not contingent, although his right to occupy and enjoy was postponed by the widow's homestead right.

It is true that M. C. Tandy was much older than Rosie Tandy, and therefore had less expectancy of life, although he survived her, but this did not make his interest a contingent remainder. In the case of *McCarroll v. Falls,* 129 Ark. 245, 195 S. W. 387, we quoted with approval the following statement of the law from the case of *Archer v. Jacobs,* 125 Iowa 467, 101 N. W. 195:

"2. A remainder is contingent where the right of the remainderman to succeed to the possession and enjoyment of the estate depends upon some contingency which may never arise, or where the person who is entitled to succeed to the possession and enjoyment at the termination of the life tenancy is not, and may never be, ascertained, or is not in being. In general, it is the present capacity of taking in possession, if the possession becomes vacant, and not the certainty that the possession will become vacant before the estate limited in remainder determines, that distinguishes a vested from a contingent remainder."

Here only the life of Rosie Tandy stood between M. C. Tandy and his right to the possession and occupancy of a half interest in the lots for his life, and only the termination of the right of homestead was necessary to vest the right of possession and occupancy in him. He had this right when he executed the deed to Rosie Tandy. He did not inherit anything from her, nor did he acquire any estate upon her death which he did not previously own. He had a vested remainder during her life, and he cannot therefore be heard to say that he has now an estate

which he did not own when he executed his quitclaim deed and which did not pass by his deed to her.

It is true, as appellant contends, that no order of court had ever assigned dower to Rosie Tandy, and that a widow's right of dower in her husband's property cannot, before assignment to her in the manner provided by law, be conveyed by her to a stranger so as to confer on him rights capable of assertion in a court of law, but such a conveyance is enforceable in equity, and this is a suit in equity. *Flowers* v. *Flowers,* 84 Ark. 557, 106 S. W. 949; *Baum* v. *Ingraham,* 141 Ark. 243, 216 S. W. 704; *Arbaugh* v. *West,* 127 Ark. 98, 192 S. W. 191; *Griffin* v. *Dunn,* 79 Ark. 408, 96 S. W. 190; *Weaver* v. *Rush,* 62 Ark. 51, 34 S. W. 256.

The deeds exchanged between M. C. Tandy and Rosie Tandy are in the nature of a family settlement, and should be upheld as such. She conveyed and relinquished to him whatever interest she had in the woodslands, and, for this consideration, whatever its value may have been, he conveyed to her his interest in the remainder of his son's estate.

Appellant testified that the dollar recited as paid was not in fact paid, but he makes no showing that any fraud was practiced upon him in having the deeds recite, as herein shown, that they were executed to divide the estate of Harry Tandy between his widow and father.

In the case of *Hampton* v. *Haneline,* 125 Ark. 441, 180 S. W. 40, it was said:

"The grantor makes the deed. The presumption is that he had the real consideration recited therein, and, in the absence of testimony tending to show that the pecuniary consideration named in the deed was inserted therein by mutual mistake or by some fraud practiced upon the grantor at the time he signed the deed, neither the grantor nor those claiming under him can be permitted to question the consideration named in the deed for the purpose of invalidating the same. See *Davis* v. *Jernigan,* 71 Ark. 494, 76 S. W. 554; *Wallace* v. *Meeks,* 99 Ark. 350-354, 138 S. W. 638."

Appellant has here no after-acquired title which he did not own when he executed his deed to Rosie Tandy, and this suit, based upon the assumption that his deed was void and conveyed nothing, was therefore properly dismissed as being without equity. The decree appealed from is therefore affirmed.