STEWART *v.* CLARK.

4-5004

Opinion delivered April 4, 1938.

944

*Ned Stewart* and *Paul Jones, Jr.*, for appellants.
*McKay & McKay*, for appellee.

MEHAFFY, J. This suit was begun by appellee, who filed her complaint in the Lafayette chancery court, alleging that she was the owner of certain described lands in Lafayette county, Arkansas, comprising 362 68/100 acres; that on November 9, 1934, she entered into a lease agreement with J. T. Stewart and Alex Stewart, Jr., under which instrument she leased said lands, except five acres, on which her house stood, for five years beginning January 1, 1935, for one-fourth of the corn and one-fifth of the cotton; the lessees agreed to keep the place in as good condition and repair as it was at the time and to make certain improvements; that the appellants immediately took possession and are still in possession; that in 1935 and 1936 appellants produced a large amount of cotton and corn each year, but failed to account to her for one-fourth of the corn and one-fifth of the cotton. She was informed that John T. Stewart and his wife, Jewel H. Stewart, claimed to be the owners of the land and have a deed thereto; she discovered the deed on record and it purported to have been executed on November 19, 1934, conveying said lands to Stewart and his wife for a consideration of $3,000 payable $300 annually for ten years, the deferred payments to bear interest from maturity at 6 per cent. A copy of the deed is attached to the complaint. She alleges that she is a negress, very old and feeble in body and mind, illiterate and unable to read and write; that she never signed the deed by mark or authorized it to be signed and never heard of the deed until a few days ago; that if she did authorize her signa-

ture she knew nothing of its contents, and the only instrument she ever authorized to be signed for her was the lease; that appellants never claimed to be the owners of the property and appellee continued to pay the taxes, including those of 1936; appellants have never offered to pay the taxes and have never paid her the full rents that are due; she has never agreed to sell the property and has never been paid any consideration for the deed; that a reasonable rental value of the farm would be $2,000 a year and that said farm was worth $15,000 at the time of the execution of the purported deed, and under present conditions it is reasonably worth at least $30,000; that the price mentioned in the deed is grossly inadequate as compared with the rental value; that the deed was not executed by her or signed or authorized to be signed; that it is a forgery and a fraud and was fraudulently obtained and is without consideration and void, and she asks that it be canceled.

An amendment was filed to the complaint on July 13, 1937, in which she corrects the description. She further alleged that appellants had breached their lease and that she is now entitled to the immediate possession.

Appellants filed an answer in which they specifically denied each and every material allegation. They alleged the execution of the lease and alleged that on November 19, 1934, appellee sold the lands to them for $3,000, and that the deed specifically provided that it should supersede the lease contract; that the sale and purchase was in good faith for a good and valuable consideration, and the deed executed in the presence of two reputable witnesses, and the appellants have complied with all terms and conditions of said deed.

Appellants filed an amendment to their answer on July 14, 1937, in which they alleged the purchase in good faith and that they had erected valuable improvements amounting in value to $6,000, and prayed in the alternative that if the deed was held void that they have a lien on the lands to secure the $6,000.

There was a reply to appellants' cross-complaint. The appellee was permitted to take a non-suit as to that portion of the complaint which sought possession of the

land, and appellants were permitted to take a non-suit as to their cross-complaint. The chancery court found that the appellee executed the deed, but that said deed was obtained by fraud and ordered it canceled and set aside. The appellants prayed and were granted an appeal.

The appellee testified that she was 74 years old, owned over three hundred acres, most of it in cultivation; that she had paid every dollar of taxes that was paid on the farm; that all her life she had cooked and worked in the field and as housekeeper for Alex Stewart; that she made a little crop every year on the side and had her own money; that on November 9, 1934, she leased the land to J. T. Stewart for five years for a fourth of the corn and a fifth of the cotton; she had been unable to write for two or three years and cannot see to read; she heard first about the deed from Charlie Stewart, who told her she was sleeping on her rights and showed her some papers; she then came to Lewisville and found out that what Charlie Stewart told her was true; that she had never said anything to Stewart about selling him the place; she had confidence in him and when she learned the facts she said to him: "You ain't bought nothing and you ain't paid nothing." She said Stewart threw five dollars down on the table and when she asked him what it was for he asked her if she did not say that she had nothing to eat, and she answered that she had plenty of money to buy all she wanted to eat, and he said: "There ain't no negro going to work that place," and she said they would. He asked what she was going to do about it and she told him to go to Lewisville and take it off the books. She denied that she had ever seen attorney Quillin. She stated that some man whom she did not know told her that John Stewart had bought her place, and then she went to a lawyer. She then employed Mr. McKay. Never went to Mr. Quillin's office and never saw him before. She then testified about the crop and the taxes and about Mr. Stewart building a house. Stewart asked for the privilege of moving a colored person's house and wanted to move down there because of his wife's health, and it was agreeable to her. When she

saw that he was not building where he asked her if he could build, she told him she did not want him to build until they had some kind of an understanding. She then testified at length on cross-examination, but the substance of her testimony was that she never made the deed, that it was fraudulent and void and she had never been paid anything and had not been paid her rent.

Other witnesses testified corroborating portions of the testimony of appellee.

J. F. Quillin, attorney-at-law, testified about Lucinda Clark and John Stewart and his wife coming to his office, and he prepared the deed and she signed and acknowledged it. He said it was apparent that she was an old negro woman, but that she appeared to be rather active mentally. She gave the information recited in the deed. He had to write several drafts before he got one to suit her. She said in substance that she did not want to have any publicity about the matter until after her death; witness told Stewart that he would have to put the deed on record to protect himself.

B. E. Ward testified that he was one of the witnesses and it was in Mr. Quillin's office and Mr. Quillin asked him to witness the old negro's signature; he had no other connection with the business and no interest.

Ruby Lavender testified that she was a public stenographer and did considerable notary work for Mr. Quillin; she testified that she took the acknowledgment of Lucinda Clark; had never seen her before; read the acknowledgment and explained it to her.

O. H. Tucker testified that in November, 1934, Lucinda Clark said something about having been to Texarkana.

John Stewart, one of the appellants, testified at length. He said that the old negro woman nursed him when he was a child; that in November, 1934, he and his wife went to Texarkana with appellee to the office of J. F. Quillin to make a deed; that Lucinda Clark wanted to make a deed; he told her he was not able to buy the land and she said she would make him able. He testified in substance that the purchase was made in good faith, and that when he took charge of the farm it was in a very

poor state of cultivation; he has made considerable improvements and gave his reasons for not putting the deed on record, and contradicted the testimony of the appellee.

Lucinda Clark was recalled and testified, contradicting the testimony of Mr. Stewart.

The court held that the deed was not a forgery, and we think this finding was correct. Mr. Quillin and the notary, Mr. Stewart and others, testified that the deed was made and how it was done, and the preponderance of the evidence supports the finding of the court that the deed was actually made.

The chancellor, however, also found and held that the appellants obtained the deed by fraud, and that it should be canceled. He ordered the deed canceled and further adjudged that any title that may be vested in the appellants would be vested out of them and vested in the appellee, and that appellee have judgment for her costs.

Appellants first call attention to *Tandy* v. *Smith,* 173 Ark. 828, 293 S. W. 735. The court there held that mere inadequacy of consideration affords no ground for setting aside a voluntary conveyance. All the circumstances and evidence in this case show that this was not a voluntary conveyance; that the old negro woman was past 74 years of age, did not understand the matter, and did not know she was making a deed to her land. While there is some conflict in the evidence as to the value of the land, yet all of the evidence shows that it was a valuable tract of land, and that the old darky did not understand what she was doing, and no payments were ever made to her, and she testified she had never received the rent that Stewart was to pay her. It is true, as contended by the appellants, that the lands had been neglected and that it cost a good deal to put them in a proper state of cultivation.

The condition and relation of the parties should be considered. This old negro woman had worked for the Stewarts many years, and Mr. Stewart testified that she had nursed him when he was a child.

The rule is well settled that where both parties were in a situation to form an independent judgment concerning the transaction and acted knowingly and intentionally, mere inadequacy in the price unaccompanied by

other inequitable incidents, is not sufficient grounds for canceling an executed contract. It cannot be said that the facts and circumstances in the instant case show that the parties were in a situation to form an independent judgment. As a matter of fact, it appears that the appellee was not in a position to form an independent judgment, and the fact that she was dealing with her employers, for whom she had worked many years, and in whose fairness she had the utmost confidence, shows that she did not exercise any independent judgment. She evidently did what they wished her to do and thought because they did wish her to do that, that it was proper to do so, and that no advantage would be taken of her.

The appellants were not necessarily guilty of any moral wrong, but an act done or omitted which amounts to fraud, or may be construed as fraud by the court because of its detrimental effect, may justify the setting aside a contract or deed irrespective of moral guilt. Persons may do a thing without any evil intention and yet the transaction may be such as to constitute a fraud at law.

"Persons, in order to be guilty of legal or constructive fraud, or, as it is sometimes called, fraud at law, do not necessarily have to be guilty of moral wrong, but a constructive fraud is a breach of either legal or equitable duty which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or injure public interests. Neither actual dishonesty of purpose nor intent to deceive, is an essential element of constructive fraud." 26 C. J. 1061, and cases cited.

The decree of the chancery court is not against the preponderance of the evidence, and it is, therefore, affirmed.