Dixie Cup Co. *v.* O'Neal

5-3782                                                    402 S. W. 2d 417

Opinion delivered May 9, 1966

*Robert Law* and *Smith, Williams, Friday & Bowen,* By: *W. A. Eldredge, Jr.* and *William F. Sherman,* for appellant.

*McMath, Leatherman, Woods & Youngdahl* and *John P. Sizemore,* for appellee.

Carleton Harris, Chief Justice. This is a Workmen's Compensation case. The issue is whether a claim for compensation (money and medical benefits) is barred by the statute of limitations. James F. O'Neal suffered a compensable injury on October 22, 1958. Claimant was unable to engage in work for about three weeks, and then returned to work, being assigned light duty until November 14, 1959, when he began to develop further trouble from his injury. He was sent to Dr. Hoyt Kirkpatrick, an orthopedist of Fort Smith, and Dr.

Kirkpatrick referred O'Neal to Dr. H. F. Flanigin of Tulsa, Oklahoma, a specialist in neurological surgery. Dr. Flanigin operated on December 5, 1959, and discharged O'Neal from the hospital on December 20. He returned to work early in February, 1960. Up until this time (some fifteen months), O'Neal had not been paid any compensation whatsoever for either period of temporary total disability, receiving only the benefit of medical treatment. On February 24, 1960, he consulted his present attorneys, and a claim was filed within a few days. Thereafter, Robert Law, Branch Claim Manager for American Mutual Liability Insurance Company, the company being one of the appellants herein, advised the commission that appellants had decided to accept the case as compensable for temporary disability, and for permanent partial disability, which might result from O'Neal's operation. A check for compensation was sent to claimant's attorneys on March 15, which was forwarded on to him, and the insurance company also furnished these attorneys with a medical progress report on June 1, 1960. This was the last communication from the company to these attorneys until after the events complained of in this litigation had occurred. O'Neal continued to work until October 10, 1963. However, following the surgery of December, 1959, heretofore mentioned, at the direction of Dr. Flanigin, he reported to this doctor (or his colleague, Dr. Duncan) twice in December, twice in February 1960, and thereafter, on May 25, 1960, April 11, 1961, November 10, 1961, May 23, 1962, and January 6, 1963.[1]

On April 19 and June 22, 1962, Law, an attorney himself, directed letters to O'Neal, stating that the company had not heard from Flanigin, and suggesting that appellee go to Dr. Kirkpatrick for a rating of permanent partial disability; appellee was advised that the company had made an appointment for O'Neal to be examined by that doctor. On July 13, 1962, Law again directed a letter to claimant, advising appellee that the

[1] O'Neal also went to the Holt-Krock Clinic on September 19, 1960.

medical reports denoted that O'Neal had a 10% permanent disability to the body as a whole, and a check in the amount of $1,575.00 was enclosed, along with a final settlement receipt.

Apparently, O'Neal wrote Law on the following July 23, making further inquiry about this settlement, and evidently asking why there was no report from Dr. Flanigin, but this letter has not been placed in the record. However, on August 2, Law replied to the letter, and enclosed a copy of Dr. Kirkpatrick's report (of the examination of claimant for purpose of rating permanent partial disability). The letter advised that the company had not received a report from Dr. Flanigin, but that it felt sure that, from Flanigin's previous conversations with Kirkpatrick, the Tulsa doctor would agree with the findings. Law stated that the company felt that Kirkpatrick was best able to determine the amount of permanent partial disability, and added that, "He also has knowledge of what claimants are due under the Arkansas Workmen's Compensation Act in payment for permanent partial disability." According to the testimony, O'Neal held the check about three months, and then cashed it.[2] Subsequently he returned to Flanigin for his regular checkup. Flanigin directed a letter to Law, setting out that O'Neal continued to have symptoms referable to his cervical spine, as well as "slight residual neurological symptoms," and the doctor recommended "that consideration be given to anterior cervical disc and fusion in conjunction with Dr. Norman Dunitz." Law informed the doctor that his company had already made a settlement with the claimant, and was no longer liable for treatment in connection with the case. O'Neal then contacted his attorneys who, upon inquiry, were advised by the company that appellant took the position that the statute of limitations had run on the claim. Subsequently, a hearing was held before a referee, who found that the claim was barred by the

[2] O'Neal stated that he thought his attorneys knew about the check and settlement, since they had known about the check he received in March, 1960.

statute of limitations, because "claimant failed to file his claim with the Workmen's Compensation Commission within one year from the last payment of compensation, or within two years from the date of injury." The full commission affirmed this holding,[3] and appellee appealed to the Sebastian Circuit Court. That court rendered a comprehensive opinion, in which it, *inter alia,* stated:

"Relying upon Mr. Law's assurances and after an exchange of letters (the claimant's not being in the record) in September of 1962, the claimant accepted the money as payment of his total accrued permanent partial disability under the Workmen's Compensation Act, based on Dr. Kirkpatrick's report and Law's representations as to Kirkpatrick's superior knowledge and what Dr. Flanigin would have had to say if he had been consulted.

\* \* \*

"In an opinion filed on April 30, 1964, the referee found that the statute of limitations had run by reason of the claimant's acceptance of the $1,575.00 in 1962. The referee deplored Law's conduct in going around claimant's attorneys, but failed to note that Law had also deliberately arranged the evaluation by a doctor strange to the case instead of Flanigin, in whose care claimant had continually been since 1958, a circumstance of which Law was well aware."

The court, finding fraud, reversed the commission, and remanded the case.[4] From the judgment so entered, appellants bring this appeal.

---

[3]The commission did not actually hear any testimony. Of course, it had the record of O'Neal's testimony before the referee, and the deposition of Dr. Flanigin was also introduced.

[4]It is not entirely clear whether the court had in mind "moral" fraud or constructive fraud; actually, the court makes findings that relate to both. Of course, one can be guilty of constructive fraud without being guilty of moral wrong. See *Stewart* v. *Clark,* 195 Ark. 943, 115 S. W. 2d 887.

First, let it be said that, under the statute,[5] an employer is given fifteen days after the filing of a claim by an employee to decide whether the employer will controvert the claim. Therefore, in the matter before us, though the company did not pay any compensation to O'Neal until approximately fifteen months after he was injured, and then, not until he had retained attorneys to assert his claim, the claim, legally speaking, was uncontroverted. It also appears that, in uncontroverted claims, it is the custom for insurance companies to have a physician rate the claimant for disability, and settle the claim on that basis, though the insurance company takes this course at its own risk.

Appellants argue that the only untoward act committed by Law was the "inadvertent" failure to send a copy of the letter to O'Neal's attorneys (wherein check for settlement was enclosed), and that this act does not constitute fraud. It is also contended that the court erred in that it did not act under any of the authorized statutory grounds in reversing the commission.

Ark. Stat. Ann. § 81-1325, Sub-Section (b) (Repl. 1960) sets out four grounds for reversing a commission order. No. 2 is, "that the order or award was procured by fraud." Appellants argue that this statute is not applicable, stating:

"It is clear the Legislature was referring to 'orders and awards' of the Commission, and not voluntary payments by insurance carriers to claimants * * *."

In view of the holding that is being rendered in this case, it is not necessary that this particular argument be specifically discussed. Suffice it to say that there are numerous cases where the courts have found fraud, though settlement of the claims was effected between the company and claimant, among others, *Lambert* v. *Remington Rand,* 78 N. E. 2d 852 (Ill.), *Texas State Highway Department* v. *Kinsler,* 230 S. W. 2d 364.

---

[5] Ark. Stat. Ann. § 81-1319, Sub-section (d) (Repl. 1960).

It is asserted that appellee did not raise the issue of fraud before the commission, and accordingly cannot raise it in the courts. Appellants contend that the question of whether fraud was committed is a question of fact, and that it must be proved with clear and convincing evidence before the Workmen's Compensation Commission. The commission, of course, is the trier of facts.

It is true that the actual word, "fraud," was not used, but counsel's statement to the referee, wherein appellee sought relief, is replete with references to the fact that the attorneys had not received any notice whatsoever of proceedings or developments, since June, 1960; that settlement negotiations were carried on solely between Law, representing the insurance company, and appellee, and the settlement was made without the approval or knowledge of the attorneys. This failure by appellant company to notify counsel was a principal consideration in the finding of fraud by the Circuit Court. While, as stated, the facts upon which appellee relied, were pretty well set forth in the statement to the referee, the direct charge of fraud (using that particular word) was not made, nor does it appear that Law had prior knowledge that this would be an issue. Having no advance notice, it follows that it would have been difficult for Law to defend. At any rate, the commission, as the trier of facts, should pass upon this question.

In accordance with what has been said, the judgment of the Sebastian Circuit Court is reversed, with directions to remand the case to the Workmen's Compensation Commission, for the purpose of that tribunal passing upon the issue of fraud. In addition to the present record, either party may offer such additional evidence as it desires.

It is so ordered.

BLAND, J., not participating.