## STATE of Arkansas *v.* C. R. GEORGE

5-5671                                    470 S. W. 2d 93

Opinion delivered June 21, 1971
[Rehearing denied September 20, 1971]

*Alex Streett,* for petitioner.

*Nathan Gordon,* for respondent.

LYLE BROWN, Justice. The sole question is whether a special circuit judge can be elected pursuant to Ark. Const., art. 7, § 21, for the purpose of selecting jury commissioners and impaneling a grand jury in a situation where the presiding judge is obviously disqualified. When the regular circuit judge of the Pope County Circuit Court, Hon. Russell C. Roberts, was notified that the prosecuting attorney desired the impaneling of a grand jury for the purpose of investigating certain activities of the trial judge, the latter, purporting to act under art. 7, § 21, disqualified himself and called for an election by the attorneys in attendance upon the court. Respondent C. R. George was elected. At the behest of the prosecuting attorney we granted a temporary writ of prohibition suspending C. R. George's plan to proceed in the special matter for which he was elected. We are now asked to make that writ permanent. The prosecutor contends that art. 7, § 21 does not authorize the procedure of electing a special judge in the instant situation. That provision in our constitution is as follows:

> Whenever the office of judge of the circuit court of any county is vacant at the commencement of a term of such court, or the judge of said court shall fail to attend, the regular practicing attorneys in attendance on said court may meet at 10 o'clock a.m. on the second day of the term, and elect a judge to preside at such court, or until the regular judge shall appear; and if the judge of said court shall become sick or die or unable to continue to hold such court after its term shall have commenced, or shall from any cause be disqualified from presiding at the trial of any cause then pending therein, then the regular practicing attorneys in attendance on said court may in like man-

ner, on notice from the judge or clerk of said court, elect a judge to preside at such court or to try said causes, and the attorney so elected shall have the same power and authority in said court as the regular judge would have had if present and presiding; but this authority shall cease at the close of the term at which the election shall be made. The proceeding shall be entered at large upon the record. The special judge shall be learned in law and a resident of the State.

Our analysis of Section 21 leads us to conclude that its purpose is to take care of emergency situations to avoid delay in the trial of pending causes which are about to be reached on the docket or which in fact have been reached. It is first provided that if the regular judge is absent at the commencement of a term, the practicing attorneys in attendance upon the court may on the second day of court elect a special judge to preside until the regular judge appears. Secondly, after the term has begun (which was the situation in this instance) and the regular judge is physically unable to continue court, or if for any reason he is disqualified in any cause then pending, the attorneys may elect a judge "to preside at such court or to try said causes." We think a sensible interpretation of Section 21 when applied to causes which arise after the commencement of the term is that a special judge may be elected to try only those causes which are pending at the time of the election. We cannot believe that the calling of a grand jury was intended to come under the phraseology "pending causes of action."

In *State* v. *Stevenson*, 89 Ark. 31, 116 S. W. 202 (1909), this court said that Section 21 was "merely provided to keep the circuit courts going by special judges," and that the exclusive function of those special judges is to "hold sessions of court" and to try those matters pending at the time of their appointment and until they are lawfully succeeded. It is pointed out that there are many duties of the court besides the trying of cases and that Section 21 does not confer any of those numerous functions on a special judge.

We refer again to the phrase "pending causes"—what was pending before the Pope Circuit Court at the time respondent assumed the office of special judge? The regular judge had taken notice of the fact that the prosecuting attorney had filed a petition with the supreme court requesting the assignment of a special judge for the purpose of impaneling a grand jury. A copy of the petition was placed on file by the circuit judge with the circuit clerk of Pope County. Thereupon the regular judge took notice of the filing of the petition and declared himself disqualified. The filing of that petition did not create a "pending cause" as that term is commonly used in legal parlance; it did not create any semblance of an adversary proceeding. It did not create a "case pending in the circuit court" within the universally accepted meaning of the phrase. See *Cruson v. Whitley,* 19 Ark. 99 (1857).

Our interpretation of Section 21 is reinforced by the language of the section which immediately follows it in the 1874 constitution. After providing for the election of special judges in Section 21, the drafters then provided for the exchange of regular judges in Section 22, which provides:

The judges of the circuit courts may temporarily exchange circuits or hold courts for each other under such regulations as may be prescribed by law.

That section is worded so that the procedure of exchange of circuits is a permissible but not the exclusive method by which a judge may be selected to preside over a circuit court; it allows the Legislature to regulate the exchange of circuits. Accordingly, the Legislature provided in Ark. Stat. Ann. § 22-142 (Supp. 1969) for the assignment of a judge by the chief justice of our supreme court. Section 22-142 is in harmony with our holding in *Knox v. Beirne,* 4 Ark. 460 (1842). That case approved an almost identical provision in the Constitution of 1836 relative to judges being sent into other districts. Thus the exchange of circuits upon agreement

of the circuit judges or the appointment by the chief justice is open as an alternative method of selecting a judge to preside over the impaneling of a grand jury in Pope County Circuit Court to inquire into the activities of Judge Russell C. Roberts.

Writ granted.

BRYD, J., not participating.

WILLIAM S. ARNOLD, Special Justice, joins in the opinion.

Supplemental opinion on denial of rehearing
Delivered September 20, 1971

*Alex G. Streett,* for petitioner.

*Nathan Gordon,* for respondent.

LYLE BROWN, Justice. The original opinion in this case was handed down on June 21, 1971, and appears in 250 Ark. 968. Appellant timely filed a petition for rehearing and asked that we reconsider that part of the opinion which would permit Judge Russell Roberts to exchange circuits with another judge. See art. 7, § 22, of our constitution. On rehearing we have been furnished with citations of authority not previously mentioned in the briefs. Those citations, coupled with our additional research, lead us to the conclusion that appellant's argument on rehearing is well taken. The rule of law which governs the question before us may be succinctly stated: A trial judge should not exercise the discretionary powers of his office in a matter in which he will be personally affected.

Judge Roberts, in choosing a judge with whom to exchange, will not be performing a purely ministerial act, but will be selecting a judge based upon Judge Roberts's own judgment—it would clearly constitute an act of discretion. The subject matter which occasions the selection of another judge unquestionably affects Judge Roberts's personal interests.

Our conclusion is supported by the common law, by our constitution, by statute, and by the canons of judicial ethics.

*The Common Law.* We said in *Morrow* v. *Watts,* 80 Ark. 57, 95 S. W. 988 (1906), that by common law interest of a judge of a court of record was ground for disqualification.

*The Constitution.* Article 7, § 22, provides that "the judges of the circuit courts may temporarily exchange circuits or hold courts for each other under such regulations as may be prescribed by law." But that section must be read in conjunction with § 20 in the same Article, which says that "no judge or justice shall preside in the trial of any cause in the event of which he may be interested." In the strictest sense Judge Roberts would not be "presiding at a trial" when entering an order making an exchange of circuits. However, the selection of a judge is an integral part of the entire proceeding and, consistent with our well-established practice, we give a broad and liberal scope, rather than a technical or a strict meaning to the word trial. *Black* v. *Cockrill,* 239 Ark. 367, 389 S. W. 2d 881 (1965); *Byler* v. *State,* 210 Ark. 790, 197 S. W. 2d 748 (1946). By so doing "the courts may achieve impartiality in the minds of the public as well as impartiality in fact." *Copeland* v. *Huff,* Judge, 222 Ark. 420, 261 S. W. 2d 2 (1953).

We have previously held that Article 7, § 20, required the disqualification of a judge in matters involving the exercise of judicial discretion when his personal rights were concerned. *Ladd* v. *Stubblefield,* 195 Ark. 261, 111 S. W. 2d 555 (1939). While pecuniary interests of the judge were involved in that case, there is no sound reason why the principle should not apply with equal force where, as here, individual rights other than pecuniary or property rights are involved.

*Statutory Law.* Under the provisions of Ark. Stat. Ann. § 22-113 (Repl. 1962) a circuit judge is prohibited from presiding over the "determination of any cause or proceeding in which he may be interested . . ." This court undoubtedly had this statute in mind, as well as art. 7, § 20, when it was faced with a similar situation in *Rowland* v. *State,* 213 Ark. 780, 213 S. W. 2d 370

(1948). There it was said that a regular presiding judge could not select a judge by exchange if the regular presiding judge was a litigant in the pending cause. It is true that such statement was dictum but the fact that it was approved by a unanimous court is significant. It was indicative of the way in which this court might well hold when the question squarely presented itself.

We do not agree with respondent's argument that the *Rowland* dictum is inapplicable in this case because Judge Roberts is not yet, strictly speaking, a "litigant." We find no logical reason why the principle of the *Rowland* dictum should govern only after the judge involved has technically become a party to an adversary proceeding and not when he is exercising, or called upon to exercise judicial discretion in matters where his personal rights will be affected. When we give the words of the statute a broad and liberal scope, as we do in construing statutory law relating to disqualification of judges, it can hardly be doubted that an exchange of circuits is a "proceeding" in the determination of which Judge Roberts is interested. See *Wimberly* v. *State,* 90 Ark. 514, 119 S. W. 668 (1909), and definitions of "proceeding" in Webster's New International Dictionary, Second and Third Editions.

*Canons of Judicial Ethics.* In our publication styled "Miscellaneous Rules of the Supreme Court," published in January 1963, are found the canons of judicial ethics adopted by this court (after their adoption by the Arkansas Judicial Council in September 1958). Section 29 thereof provides that "A judge should abstain from performing or taking part in any judicial act in which his personal interests are involved." That is not only, in essence, a statement which harmonizes with the law as we view it, but it tends to promote the appearance of impartiality as mentioned in *Copeland* v. *Huff, supra.* An apt statement of the principle is found in 46 Am. Jur. 2d, Judges § 86:

> The law goes further than requiring an impartial tribunal; it also requires that the tribunal appear to be impartial on the theory that next in impor-

tance to the duty of rendering a righteous judgment is that of doing it in such a manner as will beget no suspicion of the fairness and integrity of the judge. . . . It is also for the purpose of the appearance of impartiality that where grounds for disqualification exist, a judge should disqualify himself.

Respondent places his principal reliance upon *Evans* v. *State*, 58 Ark. 47, 22 S. W. 1026 (1893). We do not consider that case to be either controlling or persuasive. There the disqualification of the judge arose from his relationship to a "party." Here the disqualification results because the proceedings affect the individual rights of the judge. We have long recognized that the latter basis is within the purview of our constitutional provisions that require no statutory implementation as is the case when the basis is relationship to a party. *Foreman* v. *Town of Marianna*, 43 Ark. 324 (1884); *Osborne* v. *Board of Improvement of Paving District No. 5*, 94 Ark. 563, 128 S. W. 357 (1910); *Morrow* v. *Watts*, *supra*.

Respondent also argues that, if the assignment of a judge under Act 496 of 1965, Ark. Stat. Ann. § 22-342, et seq. (Repl. 1962), is the only proper method of procedure under prevailing circumstances, there was a 91-year hiatus after the adoption of our present constitution during which there would have been no means of acting when the regularly elected judge was disqualified in a situation similar to that now presented. We need not consider what might have happened during that 91-year period or speculate on the reasons for legislative inaction. The General Assembly has wisely made provision for this contingency through Act 496. We did hold in *Morrow* v. *Watts*, *supra*, that failure of the legislative branch to act where implementation was called for by the express language of the constitution might make the provision for disqualification inoperative. We did not hold that even that provision was permanently atrophied nor have we ever said that a common law disqualification could be negated merely by legislative inaction.

Nothing contained herein should be taken as preventing a proper transfer, by a disqualified judge, of any proceeding to a division of the same court which is existing and permanent but over which he does not preside.

The last two paragraphs of the original opinion are deleted, beginning with the statement, "Our interpretation of Section 21 . . ." and this supplemental opinion is substituted for the deleted portion. This action does not disturb the order granting the writ.

BYRD, J., not participating.

WILLIAM S. ARNOLD, Special Justice, joins in the supplemental opinion.