McMillan Feeder Finance Corp. *v.* Stephens

5-3762                                        398 S. W. 2d 535.

Opinion delivered January 31, 1966

*James H. Pilkinton, George E. Steel, Norman M. Smith, W. F. Borgmann,* for appellant.

*Graves & Graves,* for appellee.

Osro Cobb, Justice. Appellants are corporations engaged in the production of feed, chickens, and eggs with a number of processing plants at points in the central portion of the United States, including such a plan at Nashville, Arkansas. Appellee, as an individual, operates the Land O'Lakes Farm at Blevins, Arkansas, a few miles removed from Nashville. The Land O'Lakes Farm is devoted primarily to procuring, producing,

grading and distributing eggs to available commercial markets.

On the 14th day of May, 1964, representatives of the parties met at Nashville, Arkansas to explore a plan whereby appellee would purchase appellants' total production of eggs. A sufficient oral understanding was reached that appellants thereafter delivered to appellee their egg production, which was substantial in amount.

Appellee contends that in reliance upon the said purported oral agreement at Nashville he forthwith launched an expansion project involving the expenditure of approximately $30,000 for additional machinery and in training additional employees in order to handle his increased volume of business. Appellee further contends that he made and bound himself as to delivery commitments in anticipation of and reliance upon the continuation of his new source of supply from appellants.

It was the intention of the parties to reduce their operating understanding to a written agreement, but this dragged along by correspondence from Ft. Wayne, Indiana, headquarters for appellants, and said written agreement was never accomplished. Significantly, three or four drafts of the proposed written agreement were exchanged by mail between the parties and all of such drafts of the agreement gave to appellee the right to count below the prevailing New York market and all of such drafts of the contemplated written agreement provided that the contract could not be cancelled by either party except upon 90 days written notice.

Suffice to say that for some three and one-half months after the oral understanding at Nashville, appellee received appellants' eggs and distributed same in his expanded markets; that during this period of time a mass of paper work was exchanged between the parties as to the quantities of eggs delivered to appellee, the grades of same, prevailing prices, together with invoices and remittances, etc.

On the 3rd day of September, 1964, without written notice to appellee, appellants totally terminated its egg deliveries to appellee. On September 25, 1964, appellee filed a complaint in equity for injunctive relief, for an accounting, for specific performance of alleged provisions of an oral agreement between the parties, and in the alternative, for damages for the alleged breach of said oral agreement, most if not all of appellee's case for equitable relief being bottomed upon failure of appellants to give 90 days written notice of termination of the oral agreement.

Appellants answered by a general denial to the allegations of appellee's complaint seeking dismissal of same, and entered their cross-complaint against appellee seeking judgment for sums alleged to be due and owing on eggs actually delivered prior to termination of the working agreement. It is of interest here to note that appellee during the trial conceded a larger sum due appellants than claimed by appellants, indicating that out of the hundreds of transactions between the parties their books were not in complete reconciliation as to the accounts.

The case was tried over a period of some two months and the transcript of proceedings contains some 622 pages. Appellee offered proof as to the profits he would have made had appellants delivered the eggs to him for an additional 90 days in compliance with the alleged agreement. Appellee further offered proof as to special damages which he contended he incurred when appellants' cancellation of the working agreement without notice caught appellee with enforceable future delivery commitments against him which he could not make without procuring eggs on an emergency basis from inconvenient markets at a premium in cost and with added transportation expenses.

All of the issues joined were probed in depth during the course of the trial by able counsel representing both parties. The Chancellor required counsel to brief

their respective contentions as to the facts and as to the law. On the 12th day of November, 1964, the Chancellor entered a decree in favor of appellee in the sum of $19,801.25 and allowed a setoff on the cross-complaint of appellants in the sum of $16,711.91, leaving a net judgment in favor of appellee in the sum of $3,089.34. From this decree, appellants are here on appeal.

Appellants urge six points for reversal and we comment with reference to all of said points.

"*Point* 1. The Chancellor should have transferred the case to Circuit Court."

The record in this case reflects that appellants filed no motion for transfer to the Circuit Court and they now insist, without citing a single case as authority in support thereof, that the Chancellor should have transferred the case on his own motion. We do not agree. Furthermore, it is well settled that when an Equity Court takes jurisdiction in a case of this character that it does so as to all matters of controversy and may allow damages. *Askew* v. *Murdock Acceptance Corp.,* 225 Ark. 68, 279 S. W. 2d 557; *Toler* v. *Fischer,* 201 Ark. 1107, 148 S. W. 2d 159.

"*Point* 2. The finding and decree of the Chancellor that a valid contract existed, and that it contained a 90 day cancellation clause, are against a preponderance of the competent evidence."

The parties obviously concluded some kind of working agreement on May 14, 1964, and their actions thereafter in performance of the working agreement, together with many writings exchanged between them, fully support the Chancellor's finding as to the validity of an oral agreement between the parties containing a 90 day cancellation clause as alleged by appellee. We find no merit in Point 2.

"*Point* 3. The Chancellor's decision is not in accord with the statutes: and this matter is governed

by Ark. Stat. 85-2-101, et seq. (Uniform Commercial Code).''

The obvious answer to this contention is that appellants interposed no such plea during the trial, and it is well settled that a defense founded upon the Statute of Frauds can not be raised for the first time on appeal. *Smith* v. *Milam,* 195 Ark. 157, 110 S. W. 2d 1062; *Freer* v. *Less,* 159 Ark. 509, 252 S. W. 354; *Ark. Lumber & Contractors' Supply Co.* v. *Benson,* 92 Ark. 392, 123. S. W. 367.

> ''*Point* 4. That if an enforceable oral contract did. in fact exist, then and in that event, appellee has: not proven any damages by competent evidence as: required by law; and that the findings by the Chancellor that appellee was damaged in any amount are against the preponderance of evidence.''

The testimony reflects that a case of eggs contains 30 dozen eggs. There was evidence introduced on behalf of appellee by knowledgeable persons that at the season of the year here involved, the profits were higher than usual and that such profits reached as high as 10 cents per dozen, or $3.00 per case. Appellant offered testimony tending to show that a profit margin of 30 to 45 cents per case *after taxes* was all that appellee could reasonably expect. The formula advanced by appellants as to profits *after taxes* is rather unique and was as indefinite as the unstated taxes to which it alludes. The Chancellor's ultimate allowance of a profit to appellee of 3 1/6 cents per dozen eggs is much below the maximum figures appearing in testimony in the record as to such profits and is clearly supported by a preponderance of the evidence.

> ''*Point* 5. If an enforceable oral contract did exist, and if it was breached by appellants, and if appellee was damaged in any amount, then and in such events the amount of damages awarded to appellee by the Chancellor are greatly excessive under the

proof, and should be reduced to an amount which the evidence will support.''

We find no merit in this contention for the reason set forth as to appellants' Point 4.

''*Point* 6. The Chancellor was in error in not awarding judgment for appellants against appellee in the sum of $16,711.92 without offset.''

Our reasoning and conclusions as to appellants' previous points precludes the necessity of discussing this point which we conclude is also without merit.

Finding no merit in any of the points urged by appellants the judgment of the Chancery Court is in all respects affirmed.