LINDY BOLLEN v. E. L. McCARTY

5-5865                                        479 S.W. 2d 568

Opinion delivered May 1, 1972

*Coleman, Gantt, Ramsay & Cox,* for appellant.

*Frierson, Walker, Snellgrove & Laser, for appellee.*

J. FRED JONES Justice. Lindy Bollen and E. L. Mc-Carty entered into an agreement under which Bollen agreed to buy and McCarty agreed to sell real property in Jefferson County, Arkansas, for the sum of $38,500; $5,000 of which was paid in cash and the balance of $33,500 was to be paid at closing. The contract contained a special condition in words as follows:

> "Buyer shall have the right to withdraw this offer and receive a refund of earnest money herewith tendered on or before October 6, 1969."

Bollen attempted to withdraw his offer and obtain a refund of the earnest money but McCarty refused to return the earnest money. Bollen filed the present action against E. L. McCarty in the Craighead County Chancery Court alleging that on October 6, 1969, he withdrew his offer and demanded return of the amount he had paid. He prayed for specific performance of that provision of the contract and for the return of the earnest money he had paid.

McCarty denied that Bollen had exercised his option to withdraw his offer and receive a refund of his earnest money on or before October 6, 1969, and denied that the withdrawal of the offer was accomplished within the time provided for in the contract. He prayed a dismissal of the complaint and for recovery of his cost expended.

The question before the chancellor was one of fact as to whether Bollen delivered a notice of withdrawal to McCarty on October 6, 1969, as contended by him, or whether he delivered said notice on October 7, 1969, as contended by McCarty. The chancellor found that the option to withdraw was not exercised until October 7 as contended by McCarty and Bollen's complaint was dismissed.

On his appeal to this court Bollen relies on the following points for reversal:

"The finding and decree were contrary to the preponderance of the evidence.

In spite of trial court's finding appellant was entitled to judgment."

While it is true that we try chancery cases de novo on appeal, we do not disturb the chancellor's finding on questions of fact unless such findings are clearly against the preponderance of the evidence. *Munn* v. *Rateliff*, 247 Ark. 609, 446 S.W. 2d 664.

The evidence in the record indicates that the appellant Bollen was in the process of obtaining a Datsun automobile franchise and in order for him to do so it was necessary for him to obtain a building site in connection with such franchise in the Pine Bluff area. He employed Hubert E. Slayten, Jr. to select a site and Slayten was instructed to purchase the site from McCarty contingent upon Dr. Bollen obtaining the franchise. Bollen had no direct contacts with McCarty as others were interested in obtaining the Datsun franchise, and Dr. Bollen did not reveal the purpose he had in purchasing the property.

Mr. Slayten testified that around Saturday, October 4, 1969, Dr. Bollen called him and advised that it appeared that the franchise was not going to be granted and that he was advised by Dr. Bollen to submit to Mr. McCarty a withdrawal of his offer on Monday, October 6, the final day for withdrawal under the contract. He testified that when Dr. Bollen called him on October 4, he inquired of Dr. Bollen whether he wanted to use a local attorney in the matter, and that Bollen replied he would leave that to him (Slayten) as his agent. Slayten testified that he contacted an attorney and was advised as to how to proceed in the matter and that on Monday morning, October 6, he obtained from the attorney a withdrawal notice in duplicate. He testified that on October 6 he mailed one of the copies to Mr. McCarty by

certified mail, and that on the same date he handed the other copy to McCarty in person. A letter of withdrawal dated October 6, 1969, was offered in evidence together with receipt for certified mail bearing the date of October 6, 1969. The return receipt shows that the item was delivered on "10-7-69" and signed for by Mrs. E. L. McCarty.

Mr. Slayten testified that he tried to call Mr. McCarty several times by telephone on October 6 and finally contacted him about 2:30 in the afternoon on that date. He testified that Mr. McCarty came by in his automobile and he delivered the letter of withdrawal to Mr. McCarty in person and advised him that he was sorry that they were forced to withdraw the offer. He testified that Mr. McCarty replied that he was not quite ready to refund the earnest money as he considered that he had sold the property. He testified that he did recall Mr. McCarty saying something to the effect that he was a day late with the notice, but that he pointed out to Mr. McCarty that the contract called for withdrawal on or before October 6.

Mr. McCarty testified that he only dealt with Mr. Slayten in the transaction and that Mr. Slayten was acting for an undisclosed principal who was offering to purchase his property for an undisclosed purpose. He testified that he understood he had sold the property under the contract and was simply receiving $5,000 as earnest money on the purchase and would receive the balance when the abstract of title was examined and approved. He testified that his tenant, who was conducting a used car business and paying $240 a month rental on the property, moved because of the sale. He denied that Mr. Slayten delivered the written notice of withdrawal to him on October 6 but testified that the second notice was actually delivered on October 7 to one of his employees, T. H. Cockrell; that Mr. Slayten told him he had left the notice in his office and that this occurred on October 7, the same day the registered letter was received by his wife.

Mr. T. H. Cockrell testified that he was working as a salesman for a Mr. Ryburn who had a used car lot on

property owned by Mr. McCarty in Pine Bluff, and that he remembers Mr. Slayten handing to him a letter to be delivered to Mr. McCarty. He said he does not remember exactly which day of the week the letter was handed him by Mr. Slayten, but that he did deliver the letter to Mr. McCarty in the afternoon on the same day; that Mr. McCarty opened the letter in his presence, and remarked that he had received one just like it in the mail that morning.

As we have said so many times, the chancellor heard and saw the witnesses as they testified and is in a much better position than we are to evaluate the factual evidence from conflicting testimony. We are unable to say that the chancellor's finding that the letter of withdrawal was delivered to Mr. McCarty on October 7 as he and his witness testified, rather than on October 6 as testified by the agent of Dr. Bollen, is against the preponderance of the evidence.

The appellant cites several court decisions and annotations in support of the well-known proposition that equity abhors forfeitures, but here we have an executed land sale contract with the down payment of $5,000 as earnest money. A clause in the contract allowed the purchaser to withdraw from binding effect of his contract on or before October 6, 1969, in which event his earnest money or down payment would be refunded to him. The question then is whether there is room for the exercise of equity in the face of the trial court's finding that the revocation or withdrawal did not occur on or before the specified date in the contract.

Both parties cite our decision in *Motion Picture Advertising Service Co.* v. *Cannon,* 186 Ark. 1107, 57 S.W. 2d 1043 (1933), as being close in point on the question involved, and the appellant attempts to distinguish that case from the case at bar. Our statement in that case concerning a cancellation clause in a contract is as follows:

"The clause above quoted relating to cancellation and when notice should be given is not ambiguous. It clearly provides that he shall have the right of

cancellation after thirteen weeks' actual service had been rendered, but that he must give notice of his intention to cancel 'on or before July 30, 1929.' The right to cancel depends on the notice required. The parties might have agreed on any other date, but they saw proper to agree that notice should be given on or before July 30. It made no difference whether the thirteen weeks' actual service was then completed or not."

The Texas case of *Ducc Realty Co., Inc.* v. *A. V. Cox,* 356 S.W. 2d 807 (1962) concerned a purchaser's attempt to cancel a contract for purchase of realty and for refund of earnest money deposit. The vendor by counter action sought judgment for deposit. The contract contained a clause for the making of soil tests to the satisfaction of the purchaser. By this clause the purchaser was to notify the vendor within 15 days of receipt of the tests as to their acceptability and if not acceptable, then the purchaser could rescind the contract and would be entitled to the return of the earnest money. The trial court found that this notice was not given within the 15 day period. The Texas Court of Appeals stated:

"The provision for notice, construed nost favorably to the appellant, constituted an option granted to or reserved by the purchaser to elect to disaffirm, cancel, revoke or terminate the contract, even if the clause reciting the notice provision shall be deemed of the essence be disregarded. 'An option gives to the holder the choice and power of electing between alternatives. In option contracts time is nearly always of the essence. This would be so on either theory of an option. If we reagrd it as an offer, it is open for a time limited, and no offer can be accepted after its lapse. If we regard it as a conditional contract, it contains the express condition that notice shall be given at a specified time. Such an express condition should be enforced according to its terms.' Corbin, Readings on Contracts, Assoc. Amer. Law Schools, p. 244.

If an option contract requires notice of intention

as to optionee's exercise of the option, 'failure to give such notice on time is fatal. Time is of the essence of an option.' And 'Time is likewise of the essence of options to terminate or cancel an existing contract.' 3 Williston, Contracts (Rev. Ed.) Sec. 853, pp. 2391, 2393; and see Corbin, Contracts (1952) secs. 713-724; Simpson Contracts (1954) p. 452; 72 A.L.R. 2d 1127; I Williston, Contracts (3rd Ed. 1957) Secs. 61A, 61B, 63; 10-A Tex. Jur. pps 71, 464,515, 13 Tex. Jur. 2d Sec. 346, p. 621."

In *Arroyo* v. *Patayne Estates, Inc.*, 266 N.Y.S. 2d 565 (1966), a headnote to a per curiam opinion properly sets out the substance and holding as follows:

"Where contract for purchase of dwelling house gave purchasers option of cancellation by notice sent to defendant's attorneys by certified mail postmarked not later than August 31, but such notice was post-marked September 4, there was no indication that post office contributed to delay or that notice though dated August 30 was mailed before September 4 and there were no other grounds on which to base equitable relief, cancellation was ineffective and defaulting purchaser was barred from reclaiming his downpayment."

The decree is affirmed.

HARRIS, C. J., and BYRD, J., dissent.

CARLETON HARRIS, Chief Justice, dissenting. I do not agree that the preponderance of the testimony was on the side of the appellee; to the contrary, because of the inconsistencies and conflicts in the testimony of appellee McCarty and his witness, T. H. Cockrell, I consider a preponderance of the creditable evidence to preponderate in favor of appellant. The question is whether the notice was delivered to McCarty on October 6 or October 7, 1969. Mr. McCarty was very positive that Mr. Slaten talked to him on October 7 at the car lot on Main Street—not the 6th—and he testified that he told Slaten

when apprised that his principal did not want to buy the lot "Mr. Slaten, how can you do that? I've lost my renter and you agreed to buy the lot. How can you do that? On top of that your time has expired. Your 30 days was up Saturday".[1] He could not remember what he did on the 6th, "I don't know. If I could recall it, I would tell you but I simply do not have that much recall." McCarty also said that Slaten did not ask for an extension on the 7th, which would seem a logical thing for Slaten to do, if indeed the notice was being delivered a day late. Appellee testified that the delivery of the notice was made in the midafternoon, "I met Mr. Slaten coming out [from appellee's office] and he said, 'I left a paper on your desk.' ". He stated that he talked with Slaten for about five minutes. Subsequently however, he testified that when he went over to the car lot, Slaten was driving off. Also, during his testimony on cross-examination appellee stated he didn't remember testifying that he told Slaten "Anyway your 30 days was up Saturday", though the statement had been made on direct examination. Finally, McCarty testified that the notice was delivered to his Main Street lot, a fact subsequently disputed by the testimony of his employee, T. H. Cockrell.

Cockrell testified that, at the time in question (6th and 7th of October), he worked on a car lot located on Highway 65, which was also owned by McCarty. He said that the letter for McCarty (giving notice) was brought to him at this location in the morning, and he gave it to McCarty that afternoon. Cockrell testified *that the letter was not delivered to the Main Street lot but rather at the car lot on the highway;* in fact, he stated that McCarty did not even operate a lot on Main Street at that time. Cockrell reiterated over and over that the notice was not delivered to the Main Street address. As stated, these inconsistencies and contradictions, in my view, clearly destroy the value of the testimony offered on behalf of appellee for they establish that the memories of McCarty and Cockrell, to say the least, cannot be depended upon.

---

[1]It is not clear why the witness said the time was up on Saturday, which was October 4, since neither side presently contends other than that the date was the 6th or the 7th.

Despite the provision in the contract giving appellant the right to withdraw his offer and have his $5,000 refunded on October 6, McCarty insisted that this was not actually the agreement; that the purpose of the October 6 date was simply to permit appellant's attorney to examine the abstract. He stoutly contended that the agreement was for an absolute sale, this despite the fact that he has been in business for 40 years, and was aware that the provision was contained in the agreement. If he held such a belief, it would logically appear that appellee would have instituted suit against appellant for specific performance; instead of that, he was satisfied to take the $5,000. Of course, the fact that equity abhors a forfeiture is so well recognized as to really need no citation of authority. The general view is set out in 30 C.J.S. Equity § 57 p. 895:

"Both because penalties and forfeitures are usually harsh and oppressive, and because ordinarily they can be enforced at law, courts of equity generally refuse to aid in their enforcement, even though the case may be one in which no equitable relief would be given to the defaulting party against the forfeiture. This has been at times declared to be an absolute and inflexible rule without any exceptions.

Other cases have stated the rule with some qualification, indicating a strong leaning against, and a reluctance to enforce, a forfeiture but still not denying that it might be done in extreme cases where the remedy at law was plainly inadequate, or where the right is so clear as to permit no denial, although, as has been pointed out in some instances, and as appears on examination of the circumstances involved, frequently authorities indicating that a court of equity recognizes the right to enforce a forfeiture do not mean that the enforcement will be affirmatively decreed in such a court, but merely that the court will not lend its aid in such cases to relieve against enforcement."

Of course, we have numerous cases to the same effect.

To summarize, I think, for the reasons stated, that the weight of the evidence is on the side of appellant. Be that as it may, we certainly have a hotly contested issue—and, even under appellee's theory, appellant could not have been more than a day late. The right to a forfeiture is certainly not, in this case, "So clear as to permit no denial", and I would accordingly reverse the decree and find for appellant.

Byrd, J., joins in this dissent.