## TITAN OIL & GAS, INC., et al
### *v.* Sam SHIPLEY et al

74-115                                    517 S.W. 2d 210

### Opinion delivered December 2, 1974
[Supplemental opinion on Denial of Rehearing Jan. 20, 1975, p. 299A.]

281

*Spencer & Spencer,* for appellants.

*Hale, Hale, Fincher & Hoofman, P. A.,* for appellees.

JOHN A. FOGLEMAN, Justice. At the very threshold we are

confronted with the most difficult question presented on this appeal, the answer to which determines whether we even consider appellants' other points for reversal. The case was tried before a special chancellor, whose election was timely questioned by appropriate objections made by appellants' attorney. These objections are brought forward here by the assertion that the purported election was invalid and, as a result, the special chancellor had no authority to hear or decide this case. Let it be understood that the Hon. Jack Young, the Special Chancellor, was serving by virtue of his selection at the questioned election — not on exchange or assignment. If his election was not in the manner prescribed by law, he had no judicial power, his acts are coram non judice, and, on direct attack, the decree must be set aside as void and the cause remanded for trial as if it had never been tried. *Trotter* v. *Neal*, 50 Ark. 340, 7 S.W. 384; *Hyllis* v. *State*, 45 Ark. 478; *Gaither* v. *Wasson*, 42 Ark. 126; *Dansby* v. *Beard*, 39 Ark. 254; *Abercrombie* v. *Green*, 235 Ark. 776, 362 S.W. 2d 12.

Ark. Stat. § 22-436 (Repl. 1962) provides that a special chancellor may be elected for the same causes and in the same manner as special circuit judges. We have held this act to be controlling. *Fortuna* v. *Achor*, 254 Ark. 1035, 497 S.W. 2d 251. The causes for and manner of selection of circuit judges are set out in Article 7, § 21 of the Arkansas Constitution. The first clause of that section is no longer fully applicable to chancery courts because of the abolition of terms of these courts. Ark. Stat. Ann. § 22-406.1 (Repl. 1973). Insofar as pertinent that section reads:

> Whenever the office of judge of the circuit court of any county is vacant at the commencement of a term of such court, or the judge of said court shall fail to attend, the regular practicing attorneys in attendance on said court may meet at 10 o'clock a.m. on the second day of the term, and elect a judge to preside at such court or until the regular judge shall appear; and if the judge of said court shall become sick or die or unable to continue to hold such court after its term shall have commenced, or shall from any cause be disqualified from presiding at the trial of any cause then pending therein, then the

regular practicing attorneys in attendance on said court may in like manner, on notice from the judge or clerk of said court, elect a judge to preside at such courts or to try said causes, and the attorney so elected shall have the same power and authority in said court as the regular judge would have had if present and presiding; but this authority shall cease at the close of the term at which the election shall be made.

The order entered reflecting the action questioned by appellant reads:

The regular Chancellor being on vacation and not returning until Tuesday, October 23rd, on Tuesday, October 16th Mr. Ben E. Rice was elected Special Chancellor and was unavailable to be here Wednesday, and will be unable to be here this day, it becomes necessary to elect another Special Chancellor to preside for hearings already set by the Chancellor.

Whereupon, the hour of ten A.M. having arrived and the Honorable Darrell Hickman, being absent from the County, and Ben E. Rice, Special Chancellor, being unable to attend, the Clerk posted notices and gave all members of the bar present notice that an election of a Special Chancellor should be held at that time, and said Clerk did thereupon hold said election, at which time all the regular members of the bar voted, and Jack Young, a regular member of the bar of the Court having received the majority of the votes cast at said election, was declared duly elected Special Chancellor.

Whereupon, the said Jack Young took the oath prescribed by law, and entered upon his duties as Special Chancellor of Pulaski Chancery Court, Third Division, when the following proceedings were had, to-wit:

We have long been committed to the rule that it is not required that the reasons for the election be stated upon the record of the proceedings for the election of a special judge under this constitutional provision and that the presumption will be indulged that the facts which make the election

necessary exist. *Lambie* v. *W. T. Rawleigh Co.*, 178 Ark. 1019, 14 S.W. 2d 245; *Fernwood Mining Co.* v. *Pluna*, 136 Ark. 107, 205 S.W. 822.

In determining whether the presumption has been overcome, we must examine the facts shown in support of the attack on Young's election. In doing so, we are not, in this case, restricted by the statement once made that irregularity in the election of a special judge cannot be raised by "bill of exceptions" but must be raised by amendment to the record, as would appear from *Arkadelphia Lumber Co.* v. *Asman*, 72 Ark. 320, 79 S.W. 1060. We have both previously and subsequently held that irregularities in the election of a special judge can be shown when the protest or objection is shown on the record in the trial court and this could be spread upon the record, under former practice, by bill of exceptions. See *Caldwell's Admn.* v. *Bell & Graham*, 6 Ark. 227, *Sweeptzer* v. *Gaines*, 19 Ark. 96; *White* v. *Reagan*, 25 Ark. 622; *Gordon* v. *Reeves*, 166 Ark. 601, 267 S.W. 133; *Fernwood Mining Co.* v. *Pluna*, supra. This, of course, is appropriate and proper, and as will be shown appellant here did attempt, albeit unsuccessfully, to contradict the record made. The party unsuccessfully challenging the action taken cannot very well dictate the content of the record of the factual statements therein. Appellant was not challenging the statements made on the record in *Arkadelphia Lumber Co.* v. *Asman*, supra, but was attempting to supply by a bystander's bill of exception an omission in the record which did not even show that a special judge presided in the case. In this respect, our decisions are not really in conflict. Insofar as the *Arkadelphia Lumber Co.* case would bar appellate review of appellant's challenge, we hold it to be inapplicable. In so saying, we are not oblivious to the fact that this case was cited with approval in *State* v. *Howard*, 251 Ark. 551, 473 S.W. 2d 443. It was fully applicable in *Howard* and correctly cited. Unlike the present attack, there was no attempt there to show the true facts allegedly not recited in the record in *Howard*. There was no record before us there, save the record made of the election. No evidence was introduced or offered to contradict the facts stated in the order. In such cases the real defect is that the party seeking review did not produce a record showing that an attack on the election was made in the trial court, as is

required, because we cannot consider the question on appellate review, unless it was raised in the trial court and the grounds of objection shown. See *Sweeptzer v. Gaines,* 19 Ark. 96; *Blagg v. Fry,* 105 Ark. 356, 151 S.W. 699. We hold that appellants' challenge to the election is properly subject to our review and do not consider this holding to be inconsistent with our holding in *Howard.*

We now proceed to outline the facts disclosed by the record. Hon. Darrell Hickman is the duly elected and commissioned judge of the court. There was testimony that, before commencing a vacation, Chancellor Hickman advised the clerk of the court he had "appointed" the Hon. Ben E. Rice and the Hon. Jack Young to try cases during his absence. Judge Hickman presided over the court on Thursday, October 10, 1973 and was scheduled to have held the Chancery Court of Lonoke County on Friday, October 11. He had not appeared in the Pulaski Chancery Court since October 10.

In compliance with Ark. Stat. § 22-406.2 (Repl. 1973) the chancellor had prepared a court calender. This calender was hung on the wall of the clerk's office and showed the dates the judge of each division would hold court in other counties and all other dates were devoted to Pulaski county. The dates for Judge Hickman's division were marked on a calender hung on the wall in his office. October 16, 17, and 18, 1973, were among the dates prescribed for the holding of the court presided over by Judge Hickman in Pulaski County. In August, 1973, this case had been specifically set for trial commencing on October 17 and continuing on the 18th and 19th. Rice had been elected chancellor on October 16, but did not appear on either October 16th or 17th. On October 17th, there was a purported election of Young as special chancellor which recited that Hickman was absent from Pulaski county. This election was held void by Young on that date upon objection by appellant.

On October 18, another election was held, and the clerk declared Young elected and he assumed the bench and proceeded to call this case for trial. Rice was in his office in Jacksonville at 9:00 a.m. on that date, and did not appear in

the courthouse in Little Rock on that day. On the morning of the day of the election, he advised the clerk by telephone merely that he "would not be available". The only notice of election of any kind was an unsigned one posted October 17th by the clerk on each entrance to the courtroom in which the Third Division of the Pulaski Chancery Court was normally held. The notice read:

You are hereby notified that a special chancellor will be elected at 10:00 A.M. October 18, 1973, for Third Division of Pulaski Chancery Court, in the Third Division Chancery Court Room.

Twelve to fifteen attorneys appeared in the courtroom and participated in the election held at 10:00 a.m. at which Young was again elected. There was no written communication to the clerk from either Hickman or Rice, or any other document attesting the whereabouts of either, or the inability of either to be present on October 18.

After preliminary matters relating to pleadings in this case had been disposed of by Judge Young, appellants' counsel renewed the motion challenging the qualifications of the special chancellor. He showed by testimony of the clerk that she had learned that Judge Rice was unavailable only by his statement to that effect when she called him at his office in Jacksonville about 9:00 a.m. on the morning of the 18th, that Rice gave no reason for his inability to attend, that the notice referred to in the order was posted at each door of the courtroom the preceding day, October 17, that no notice was given to any attorney except by the notices posted, that there were probably only 12 to 15 lawyers present, and that a number of votes were cast in the election.

The special chancellor found that the notice, as well as the time and manner of election met constitutional requirements, and that the manner of determining the absence of the regular judge and any previously elected special judge was adequate for the proper administration of justice. He held that the necessity for election of a special chancellor did exist and that he had been properly elected.

It was essential to the election of a special judge in the circumstances prevailing here that the judge die, or be sick or *unable to hold court*. Appellant argues that inability to hold court in the sense of constitutional provision means a physical *disability*, relying to some extent upon our language in *State* v. *George*, 250 Ark. 968, 470 S.W. 2d 593, where we held that a special judge could be elected only to try cases pending at the time of the election. The expression upon which appellant relies relates to the provisions governing election of special judges after the term has begun where we said that after the term had begun and "the regular judge is physically unable to continue court . . . the attorneys may elect a judge". Appellant emphasizes the word "physically" in the above quotation in arguing that a judge must have suffered a physical *disability* before this clause applies. We think appellant overemphasizes this word. The sentence in that opinion was not written as a comprehensive or exclusive one, but was a general description of conditions under which this provision governed. We are unwilling to give such force to this dictum or to say that either Hickman, the regular chancellor, or Rice, assuming that he was duly elected special judge, was not *unable* to continue to hold court. Earlier cases had categorized this constitutional provision as coming into play when the regular judge falls ill or dies or is "unable for any cause to hold the court." *Cates* v. *Wunderlich*, 210 Ark. 724, 197 S.W. 2d 482; *Hyllis* v. *State*, 45 Ark. 478. If appellant's interpretation of the *George* language was correct, the words "shall become sick or die" would have sufficed without being followed by the words "or unable to continue to hold such court". We read our cases as being harmonious and do not interpret the language of *George* to be so restrictive as to limit the language either of the constitutional provision or the earlier opinions.

There is nothing in this record to show that the regular judge was not on vacation, or that he was able to continue to hold the court. Even if appellants' version of the *George* language is applied, one physically absent from Pulaski county would be physically unable to hold court. There is nothing in the record to show that Hickman was in the courthouse or in Pulaski county on the days when this case had been set for trial, which were also days designated for the holding of this

division of the court in Pulaski county. The inference that Rice was in Pulaski county is certainly permissible, but that fact alone does not mean that he was able to continue to hold the court. The reason for his unavailability does not appear, but in order to overcome the presumptive correctness of the record made, it was necessary that it be shown that he was able to hold court. We held in *George* that the very purpose of Article 7 § 21 was to avoid delay in the trial of pending cases which are about to be reached on the docket or which in fact have been reached, in emergency situations. We reiterated our position in *State v. Stevenson*, 89 Ark. 31, 116 S.W. 202 that the purpose of this constitutional provision was to keep the sessions of the court from failing and the courts in motion by special judges, whose function was to hold sessions of court and try those matters pending at the time of their appointment and until they are legally succeeded. We have recognized that the absence of the regular judge on a day properly fixed for holding court constituted such an emergency. *Little Rock & Ft. Smith Railway Co. v. Barker*, 39 Ark. 491, *Fernwood Mining Co. v. Pluna*, 136 Ark. 107, 205 S.W. 822.

The judge's determination of the necessity for his being absent from court on a day fixed for its being in session is conclusive and the record showing his absence and the election of a special judge in accordance with the requirements of the constitution is impervious to attack, not only collaterally, but on appeal, unless the facts which would defeat the election are recited in the record. *Fernwood Mining Co. v. Pluna*, supra. We cannot say that this record discloses facts showing that the election was unnecessary or improper. It was not even necessary that the record of the election recite that either Hickman or Rice was dead, sick or unable to hold court in order for it to be impervious to attack on appeal in the absence of an affirmative showing to the contrary. *Lambie v. W. T. Rawleigh Co.*, 178 Ark. 1019, 14 S.W. 2d 245. The mere absence of both Judge Hickman and Judge Rice on a day legally appointed for the holding of court made it the duty of the clerk to certify their inability to hold the court and to hold an election for a special judge to preside over the trial of pending cases. *Fishback v. Weaver*, 34 Ark. 569. As to Judge Hickman, mere physical absence might not have been sufficient if it had been shown that he was detained in another

county because of his judicial duties in connection with the holding of the chancery court there on a day legally fixed for the holding of that court. *Red Bud Realty Co.* v. *South,* 145 Ark. 604, 224 S.W. 964; *Caldwell* v. *Barrett & Turner,* 71 Ark. 310, 74 S.W. 748; *Street* v. *Reynolds,* 63 Ark. 1, 38 S.W. 150; *State* v. *Williams,* 48 Ark. 227, 2 S.W. 843. But see, Ark. Stat. § 22-406.2, 406.3 (Supp. 1973), 22-407 (Repl. 1962); *Brown* v. *Lewis,* 231 Ark. 976, 334 S.W. 2d 225 (in which the applicable statute is referred to as 22.408.1 as it was then digested). But a sufficient answer here is that it was not shown in attempting to overcome the presumptive validity of the election proceeding that this was the case. On the contrary, it appears that October 18 was a day lawfully fixed for holding the chancery court of Pulaski county.

There has been no implementation of Article 7 § 21 by statute or rule to prescribe procedures to be followed in the giving of notice or the conduct of the election of a special judge. Even though the posted notice was not signed, the clerk posted it on the day before the election. Notice to the "regular practicing attorneys in attendance on said court" was all that was necessary. It is not required that notice be given to all attorneys regularly practicing before the court or that it be published in any particular manner or be written or signed. The regular practicing attorneys in attendance were those present at the time regularly appointed for holding court when the words "in attendance on said court" are given their plain, ordinary meaning. The only statute which would possibly have any bearing is Ark. Stat. Ann. § 22-339 (Repl. 1962), passed prior to the adoption of our present constitution. It implemented § 9 of Art. VII of the Constitution of 1868 which provided for election of special judges. It was contained in Title XV, Chap. IX, Art. II, Miscellaneous Proceedings, which was no more specific as to the manner of proceeding than Article 7 § 21 of the present constitution. Section 22-339 provides for an election by the "attorneys then present". We have treated the words "regular practicing attorneys in attendance on said court" to convey virtually the same meaning. See *Abercrombie* v. *Green,* 235 Ark. 776, 362 S.W. 2d 12; *Bradley* v. *State,* 213 Ark. 927, 213 S.W. 2d 901; *Veal* v. *Shinn,* 49 Ark. 227, 4 S.W. 771. Although the challenge there was not directed to the notice, in *Fernwood Mining Co.* v.

*Pluna*, 136 Ark. 107, 205 S.W. 822, notice was given by the clerk to the attorneys assembled in the courtroom. In *Howard*, the record recited that the notice was given to "members of the bar present" and to "all members of the bar in attendance on said court".

Appellant also challenges the jurisdiction of the chancery court to entertain an action under Ark. Stat. Ann. § 67-1256 (Repl. 1966). This is a two-pronged argument. The first is that, since the statute provides that the action may be brought either in law or equity, there was an adequate remedy at law. The second is that the General Assembly cannot confer on the chancery courts any jurisdiction they did not possess at the time of the adoption of the Constitution of 1874. The answer to the first argument is that no motion to transfer to law was made by appellant. Error in bringing a suit in equity when there is an adequate remedy at law is waived by failure to move to transfer the cause to the circuit court, so that the chancellor's decree is not subject to reversal for failure to transfer the case where the adequacy of the remedy at law is the only basis for questioning equity jurisdiction, unless the chancery court is wholly incompetent to grant the relief sought. *McMillan Feeder Finance Corp.* v. *Stephens*, 240 Ark. 167, 398 S.W. 535; *Reid* v. *Karoley*, 232 Ark. 261, 337 S.W. 2d 648; *Hemphill* v. *Lewis*, 174 Ark. 224, 294 S.W. 1010; *Higginbotham* v. *Harper*, 206 Ark. 210, 174 S.W. 2d 668; *Newell Contracting Co.* v. *McConnell*, 156 Ark. 558, 246 S.W. 854; *Sledge Norfleet Co.* v. *Matkins*, 154 Ark. 509, 243 S.W. 289; *Moody* v. *Brinkley*, 17 Ark. 340. The underlying basis for this holding is that this is the sort of question which cannot be first raised on appeal. *Owen* v. *Johnson*, 222 Ark. 872, 263 S.W. 2d 480; *Columbia Compress Co.* v. *Reid*, 160 Ark. 436, 254 S.W. 825; *Sessoms* v. *Ballard*, 160 Ark. 146, 254 S.W. 446; *Gerstle* v. *Vandergriff*, 72 Ark. 261, 79 S.W. 776. See also, *King* v. *Payan*, 18 Ark. 583. Furthermore, it is not error to refuse to transfer a case to the court of law where the jurisdiction of the two courts is concurrent. *McClelland* v. *Linton*, 121 Ark. 79, 180 S.W. 482; *Goodrum* v. *Merchants & Planters Bank*, 102 Ark. 326, 144 S.W. 198; *Cribbs* v. *Walker*, 74 Ark. 104, 85 S.W. 244; See also, *Wilson* v. *Lucas*, 185 Ark. 183, 47 S.W. 2d 8. On th other hand, it is reversible error to transfer a case brought in equity to the law court, if equity has concurrent

jurisdiction. *Vaughan v. Hill*, 154 Ark. 528, 242 S.W. 826. Where there is concurrent jurisdiction, the court which first acquires jurisdiction may, as a rule, retain it. *Bagnell Tie & Timber Co. v. Goodrich*, 82 Ark. 547, 102 S.W. 228.

As will be seen, the chancery court was not wholly incompetent to grant the relief sought here, so the question of the adequacy of the remedy at law has been waived and cannot be raised for the first time on appeal. And, as appellants point out, the statute itself makes the jurisdiction concurrent. Ark. Stat. Ann. § 67-1256. While we think that there was no reversible error in the chancery court's entertaining jurisdiction in this case for the reasons hereinabove set out, appellants further argue that the chancery court had no jurisdiction of the action, because it was brought under the statute. Appellants contend that the statute is an unconstitutional extension of the jurisdiction of the chancery court relying upon Article 7 § 15 of the Arkansas Constitution and such cases as *Nethercutt v. Pulaski County Special School District*, 248 Ark. 143, 450 S.W. 2d 777; *Patterson v. McKay*, 199 Ark. 140, 134 S.W. 2d 543; *Gladish v. Lovewell*, 95 Ark. 618, 130 S.W. 579; *Hester v. Bourland*, 80 Ark. 145, 95 S.W. 992. For the most part these cases fall into that classification wherein the chancery court is, and always has been incompetent to act, and for that reason are not controlling here, as we will show. *Patterson v. McKay*, however, is different and is actually somewhat supportive of the opposite point of view, i.e. a statute that does not grant jurisdiction but only establishes a statutory method of exercising jurisdiction already existing does not run afoul of the constitutional prohibition.

In considering the question thus posed, we must examine the statute in question insofar as it relates to the case at hand. Appellees alleged that Titan Oil & Gas, Inc. sold undivided working interests in non-producing oil and gas leases on lands in Lubbock County, Texas, in violation of the Arkansas Securities Act [Ark. Stat. Ann. § 67-1235 et seq (Repl. 1966 and Supp. 1973)] in that they were securities which had not been either registered or exempted from registration and the sales were effected through means of fraudulent representations and statements which operated as a fraud or deceit upon them. They offered to deliver to the

court the certificates issued to them and to pay into the treasury of the court all income they had received on the securities. They prayed for recovery of the consideration paid for these certificates. They amended the complaint to specify the purchases, considerations paid and the representations, statements and actions which they contended operated as fraud and deceit upon them. They alleged that they were entitled to recover the consideration paid by them, interest, costs and a reasonable attorney's fee pursuant to Ark. Stat. Ann. § 67-1256 and to have the contracts rescinded, cancelled and held for naught, and for recovery of the consideration paid, under traditional principles of equity. Thus it will be seen that appellants proceeded not only under the statute but under preexisting equity principles.

Under the Arkansas Securities Act is is unlawful for any person, in connection with the offer or sale of any security[1] (1) to employ any device, scheme, or artifice to defraud, (2) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make statements made, in the light of circumstances under which they are made, not misleading, or, (3) to engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person. Section 67-1256 provides that one who offers or sells a security by means of such untrue statement or omission is liable to a buyer who did not know of the untruth or omission, either at law or in equity, for the consideration paid for the security, interest at 6% per annum, costs and reasonable attorney's fees, less income on the security received by purchaser, or for damages if the buyer no longer owns the security.

It will be seen that the cause of action under the statute is not a great deal broader than the common law actions of fraud and deceit and the equitable proceeding for cancellation of a contract and rescission, particularly when we consider that type of fraud usually referred to as "legal or constructive fraud," i.e., misrepresentations having a tendency to deceive others, but made as true without knowledge of their

[1]Although appellants express doubt that the certificates involved here are securities under the Act, referring to *Shepherd* v. *State*, 246 Ark. 744, 439 S.W. 2d 627, they did not urge the inapplicability of the statute as a point for reversal.

falsity and without any moral guilt or evil intention. See *Hunt v. Davis*, 98, Ark. 44, 135 S.W. 458; *Cribbs* v. *Walker*, 74 Ark. 104, 85 S.W. 244; *Standard Motors Finance Co.* v. *Mitchell Auto Co.*, 173 Ark. 875, 293 S.W. 1026; *Miskimins* v. *City National Bank of Ft. Smith*, 248 Ark. 1194, 456 S.W. 2d 673. The general rule is that where there is fraud, equity has either exclusive or concurrent jurisdiction. *Wadkins* v. *Bank of Vandervoort*, 176 Ark. 1206, 3 S.W. 2d 696. Where courts of equity have subject matter jurisdiction they do not lose it by reason of a statute giving similar jurisdiction to courts of law. *Vaughan* v. *Hill*, 154 Ark. 528, 242 S.W. 826; *King* v. *Payan*, 18 Ark. 583.

The exercise of equity jurisdiction was not frozen in a rigid mold by the constitutional limitation. While new subject matter jurisdiction cannot be conferred by legislative act, it is quite clear that new procedures, approaches and treatment may be prescribed, followed and applied. Otherwise, the maxim that equity suffers no wrong to be without a remedy, the very foundation of chancery court jurisdiction, would be meaningless. The statute here defines what constitutes the legal wrong (fraud) entitling a buyer to have rescission and restitution. There is no reason why the remedy for the wrong should not be granted by the court which has always had jurisdiction of the "wrong" and the "remedy" prescribed. We have stated that equity must always be as astute in preventing fraud as corrupt minds are in conceiving it and that a court of conscience must keep the granted relief abreast of the current forms of iniquity. *Renn* v. *Renn*, 207 Ark. 147, 179 S.W. 2d 657. We have added that equitable relief should not be refused because of technical distinctions, where the evidence firmly establishes that fraudulent acts have been committed. *Vaughan* v. *Sutton*, 236 Ark. 310, 365 S.W. 2d 863. We have recognized that statutory provisions may constitutionally affect the method of exercising existing equity jurisdiction or regulate the chancery practice. *Patterson* v. *McKay*, supra; *Wilson* v. *Lucas*, 185 Ark. 183, 47 S.W. 2d 8.

To summarize, the action brought by appellees was based primarily upon allegations of fraud upon which they sought cancellation of certain instruments and contracts and restitution, and being peculiarly within the established

powers of equity, was one in which equity jurisdiction was properly assumed and exercised, even though the law court might have had concurrent jurisdiction and some of the relief sought as an incident to the action might have been of a purely legal nature. See *Cribbs* v. *Walker*, 74 Ark. 104, 85 S.W. 244; *Tandy* v. *Smith*, 173 Ark. 828, 293 S.W. 735; *Schley* v. *Dodge*, 192 Ark. 365, 91 S.W. 2d 280; 12 C.J.S. 943, 1022, Cancellation of Instruments, §§ 2, 50. There was no error on this score.

Appellants next contend that appellee Gary E. Jones was not entitled to recover under the Arkansas Securities Act. This argument is based upon provisions of Ark. Stat. Ann. § 67-1256 (f). That subsection bars any person who has made or engaged in the performance of any contract in violation of the act, with knowledge of the facts by which its making or performance was in violation, from basing any suit on such contract. Appellants argue that this appellee was a vice-president of Titan and a salesman for them who made most of the sales in Arkansas and received commissions for the sales, that he contacted prospective purchasers, furnished them with copies of a prospectus and other instruments, invited them to meetings where the interests were discussed and generally participated actively in the sale of the interests involved in this action.

Among the findings of fact made by the chancellor was that sales of interests were made to Gary E. and Janie J. Jones on August 9, November 1 and 23, and December 17, 1971 and January 21, 1972, but that, even though Gary E. Jones received commissions for sales to purchasers in Arkansas, the record was unclear as to whether those commissions or his activities were directly or materially involved in any of the sales to the parties to the action. It should be noted that appellee Gary E. Jones was made a party to the action by a cross-complaint filed by appellants, to which he responded with a counterclaim based on virtually the same allegations as were made by other appellees in the complaint in the action.

Appellee Shipley, a purchaser of some of the interests involved, first heard of Titan Oil & Gas Co. Inc. in June or Ju-

ly, 1971, from Gary Jones, a friend and fellow employee at the Arkansas Department of Health. Gary Jones only said that he had heard about some wells in Louisiana and mentioned the name of his father, Gomer Jones. Shipley decided to invest after he had thoroughly read a prospectus and letter from an accounting firm in Monroe, Louisiana, given him by Gary Jones. Sometime in September or October, he received a map which was either presented at a meeting held then, or given him by Gary Jones. Gary Jones invited him to the meeting. Shipley was told by Gary Jones that he was representing Titan and receiving commissions from it. Shipley said that there was nothing false, fraudulent or misleading in the prospectus, or in the accounting information, except that he understood from what appellant Murphy later said that the statement was based on actuality, rather than assumptions, even though the statement itself stated that it was based upon certain assumptions. He knew of nothing that Gary Jones said that was false, fraudulent or misleading.

James P. Jones was also a State Health Department employee. He was told of Titan and given a prospectus by Gomer Jones. He went to the meeting in September or October upon invitation of Gary Jones. Both Gary and Gomer Jones were present at the meeting, but James P. Jones did not see them participate otherwise. James Jones later received a prospectus on a Henry Mahoney well, in which he participated, from Gary Jones. He also was invited to Gary's home where he met and discussed oil investments with appellant Beck. He then learned that Gary represented Titan.

Gomer Jones testified that he became sales representative and a vice-president of Titan on July 1, 1971, before his son Gary became a sales representative. He contacted Gary about the matter on the same day he contacted James P. Jones. Appellant Harvey also testified that Gary Jones was elected as vice-president subsequent to Gomer's election in July. He said that all sales made in Arkansas were made by Gary Jones, Gomer Jones or Arlen Craig, Jr. Harvey said that the meeting with investors in the fall of 1971 was held at the request of "Mr. Jones", but it is apparent that the reference was to Gomer Jones.

Gary Jones said that he and his wife made an investment in a well known as Gertrude Wright No. 1 on August 9, 1971, after having read some material relating to it shown to him by his father. He said after this well proved to be a producer, his father asked him if he would be interested in being a sales representative. He said that he had never participated in, or received notice of any stockholders' meetings, or received any dividends from Titan and that he had never before been involved in any oil ventures or "security deals".

There is absolutely no evidence that Gary Jones made any representations to any of the appellees or that he had any knowledge whatever of "...the facts by reason of which [any contract made] was in violation..." of the statute. Furthermore, he did not sue on a contract. He sued to cancel contracts made and to recover the consideration paid by him. It would be difficult to say that Gary Jones "made or engaged in the performance" of the contracts on which he was the purchaser in violation of the provisions of the act. To say the least, we could not say that there was a preponderance of evidence showing that Gary Jones was barred from recovery under the act.

Appellants next contend that there was not sufficient evidence to establish common law fraud or deceit on their part. This point for reversal seems totally dependent upon appellants' argument that the chancery court had no jurisdiction of the statutory action. There is no argument that the evidence was insufficient to establish a cause of action under the Arkansas Securities Act. It is quite clear that the chancellor held that appellees had established a cause of action under the act and that the court's decree is based substantially upon that holding with particular emphasis on omissions of appellants to state material facts in order to prevent statements made from being misleading and the failure of appellants to show by a preponderance of the evidence that they did not know, or in the exercise of reasonable care could not have known, of the untruth or omission. Since we have held that the trial court did have jurisdiction of the action on statutory grounds, we find it unnecessary to determine where the preponderance of the evidence as to common law fraud and deceit lies. No useful purpose would be served by a

review of the evidence as to the liability of appellants under the act, and it would only serve to extend this already lengthy opinion. It is sufficient to say that we could not say that the chancellor's holding or the statutory cause of action was erroneous or clearly against the preponderance of the evidence.

Finally, appellants argue that they were entitled to contribution from both Gary Jones and Gomer Jones under Ark. Stat. Ann. § 67-1256(b) (Repl. 1966). The chancellor dismissed appellants' cross-complaint against Gary E. Jones but rendered judgment in their favor against Gomer Jones as to $3,150 of the collective judgment together with pro rata costs and attorney's fees. The trial court found that, by a preponderance of the evidence, Gomer Jones was a participant in the initial sale of interests to appellees Shipley, James P. Jones and Gary E. Jones with respect to the well known as Gertrude Wright No. 1. Otherwise, it was found that as to further involvement of either Gomer or Gary E. Jones, the record was clear that they received commissions for sales, but was "unclear that those commissions or their activities were directly or materially involved in any of the sales to the parties to this action".

The section of the act upon which appellants rely makes every officer of a seller and every employee or agent of a seller who materially aids in the sale jointly and severally liable with the seller, unless the officer, employee or agent sustains the burden of proving that he did not know, or in the exercise of ordinary care, could not have known, of the existence of facts by reason of which the liability is alleged to exist. It also provides for contribution as in cases of contract among those liable.

There is little need to discuss the evidence as to the participation of Gary Jones in the sale to James P. Jones. Gomer Jones contacted both James and Gary with reference to the sale of interests on the same day. As a result, Gary himself invested in Gertrude Wright No. 1 and when it was reported that this well was a producer he became enthusiastic. Other purchases made by James were made after he attended a meeting at which appellants Harvey, Murphy (president)

and Beck (vice-president) spoke and presented material, and on another occasion after Gary Jones had merely brought him a prospectus. James Jones said that neither Gomer nor Gary participated in the meeting even though Gary had invited him. He also had a private conversation with Beck just after the meeting, but before he invested in the John Owens well on that occasion.

Shipley found nothing misleading about material Gary Jones furnished. Gary did nothing more than invite Shipley to the meeting addressed by Murphy, Beck and Harvey. The question whether Gary Jones materially aided in these sales was one of fact, the resolution of which depended to some extent on the inferences drawn from the testimony. We are unable to say that the chancellor's finding on this question was clearly against the preponderance of the evidence.

We quite readily agree with the chancellor that Gomer Jones was a material participant in the sales of interests in the Gertrude Wright No. 1 well. We likewise cannot say that denial of further relief against him was erroneous. Appellants had the burden of proving by a preponderance of the evidence that his further participation materially aided in the sales. The chancellor's saying that the record was unclear, means to us that, in his opinion, there was not a clear preponderance, in which case appellants failed to meet their burden. *Neil* v. *Deming*, 21 S.W. 1066. "Preponderance of the evidence" means evidence of greater convincing force and implies an overbalancing in weight. *Smith* v. *Magnet Cove Barium Corp.*, 212 Ark. 491, 206 S.W. 2d 442. Where the evidence tends equally to sustain two inconsistent propositions, the party having the burden of proof cannot prevail. *Standard Pipe Line Co.* v. *Burnett*, 188 Ark. 491, 66 S.W. 2d 637, cert. den. 292 U.S. 649, 545 S. Ct. 857, 78 L. Ed. 1499; *Biddle* v. *Jacobs*, 116 Ark. 82, 172 S.W. 258; *St. Louis I.M. & S. Railway Co.* v. *Henderson*, 57 Ark. 402, 21 S.W. 878. See A.M.I. Civil, 2d Ed., 202.

In arriving at his conclusion, the chancellor necessarily had to decide to some extent what inferences were proper to be drawn from the evidence, and to weigh the evidence in the light of his evaluation of the credibility of the witnesses.

There were no really disinterested witnesses on this point. There is no indication in Shipley's testimony that Gomer Jones actively participated in any sales to him after the first investment in Gertrude Wright No. 1. James P. Jones knew that Gomer Jones was being paid commissions on his purchases, but gave no indication that Gomer had actively participated in the sales after his original purchase. Gomer Jones stated that he was never consulted by Titan officers about anything except sales, but he admitted he had encouraged the meetings in Arkansas in which they participated. He also testified that he knew nothing about the oil business and that he never saw any meeting at which minutes were taken. He introduced the appellants who were officers of Titan at meetings appellees attended. There is no indication that he did more than this at a meeting, except for inviting persons present to ask questions of Harvey, Beck and Murphy. Gomer Jones said that he invested his commissions in the various operations in which Titan was selling interests.

The weight to be given evidence depends upon its effect in inducing belief. *Romines* v. *Brumfield,* 199 Ark. 1066, 136 S.W. 2d 1023. Where evidence is in conflict, that which preponderates is the evidence entitled to greater weight in respect to credibility. *Missouri Pacific Railroad Co.* v. *Hancock,* 195 Ark. 414, 113 S.W. 2d 489. There is a preponderance of the evidence only when there is a preponderance of all reasonable inferences that might be drawn to prove the principal facts sought to be established, sufficient to outweigh all other contrary inferences. *Smith* v. *Magnet Cove Barium Corp.,* supra.

Even though we try chancery cases de novo on appeal, we will affirm the chancellor's decision and will not disturb his findings of fact, unless they are clearly against the preponderance of the evidence. *Campbell* v. *Richardson,* 250 Ark. 1130, 468 S.W. 2d 248; *Bollen* v. *McCarty,* 252 Ark. 442, 479 S.W. 2d 568. Where the testimony is in sharp conflict, or is evenly balanced, and the state of the record is such that we are in doubt as to where the preponderance of the evidence lies, we will be governed by the chancellor's findings if he has not erroneously applied the law. *Willis* v. *Denson,* 228 Ark. 145, 306 S.W. 2d 106; *Brunson* v. *Reinberger & Collier,* 134 Ark.

211, 203 S.W. 269. On the record here, when we consider those factors bearing on the chancellor's decision, we are unable to say that he erred in weighing the evidence.

Since appellant has not demonstrated error, the decree is in all respects affirmed.

Supplemental Opinion on Rehearing
delivered January 20, 1975

JOHN A. FOGLEMAN, Justice. In their petition for rehearing, appellants have correctly pointed out that in our opinion of December 2, 1974, we overlooked their contention that Gary E. Jones and Gomer Jones should be held liable under Ark. Stat. Ann. § 67-1256 (b) as officers of Titan Oil & Gas, Inc., the seller. Even though this point was only casually stated in appellants' brief, it was argued in their reply brief. It was clearly overlooked by the trial court, even though, when the pleadings are construed in favor of the pleader, the question was in issue. Sec. 67-1256 (b) clearly makes an officer of a seller liable jointly and severally with and to the same ex-

tent as the seller unless he was a non-seller and sustains the burden of proving that he did not know and in the exercise of reasonable care could not have known of the existence of the facts by reason of which the liability was alleged to exist. It provides for contribution "as in cases of contract among the several person so liable".

As we read the statute, an officer who materially aids in a sale would be liable regardless of his knowledge or lack of knowledge. Consequently a discussion of this liability on the part of Gary E. Jones and Gomer Jones is material to our affirmance of the chancellor's finding on this liability only and we adhere to our original opinion insofar as this question is concerned. On the other hand, the chancery court did not consider or decide the question of the liability of an officer who is a non-seller.

The general rule in equity cases is that, with all the record fully developed, we should finally decide a case here instead of remanding it to the chancery court, particularly when we can plainly see what the rights and the equities of the parties are. *Narisi* v. *Narisi*, 233 Ark. 525, 345 S.W. 2d 620; *Pickett* v. *Ferguson*, 45 Ark. 177, 55 Am. St. Rep. 545. We can say that this is the case with reference to the liability of Gary E. Jones. We note that under Ark. Stat. Ann. § 67-1256 (f) Gary E. Jones would have been barred from recovering if he had knowledge of the facts by which the making or performance of the contract with him was in violation of the Arkansas Securities Act. In our original opinion we stated that there was no evidence that Gary E. Jones had any knowledge whatever of the facts by reason of which any contract made was in violation of the statute and that we could not say that there was a preponderance of the evidence showing that Gary Jones was barred from recovery.

The testimony shows that Gary E. Jones had heard about these wells in Louisiana and that he had accepted, at face value, a prospectus and a letter from Donald & Kuhn, accountants in Monroe, Louisiana. The appellee-plaintiffs did not contend that these were misleading. There was also testimony that Gary E. Jones attended the meetings that other purchasers attended but otherwise did not participate

in the meetings. Gary E. Jones received the prospectuses from his father Gomer, who asked him to read them. It was only after the first well was a producer that his father asked him if he would be interested in being a seller's representative. He made investments just as the other purchasers did. He testified that he never received notice or participated in any shareholders' meetings. He said that he had never been involved in any oil ventures or securities dealings prior to these. According to appellant Harvey, Gary E. Jones was not elected vice president until sometime in the fall of 1971, "around October". At this time, Shipley and James P. Jones had already purchased interests in at least one well. We feel that Gary E. Jones sustained the burden of proving that he did not know, and in the exercise of reasonable care could not have known, of the existence of the facts by reason of which the liability was alleged to exist.

The situation is quite different as to Gomer Jones. We cannot say that we can plainly see what the rights and the equities of the parties are as to him or the decree which should have been rendered on the cross-complaint against him. It is true that the chancellor held that there should be contribution on his part as to $3,150 of the collective judgment against Titan and its other officers, together with pro rata costs and attorneys' fees. This holding was obviously based on the sales in which Gomer Jones materially aided.

Contribution is an equitable doctrine and relief is granted only when the equities are equal. See *Taylor v. Joiner,* 180 Ark. 869, 24 S.W. 2d 326; *U. S. Fidelity and Guaranty Co.* v. *Aetna Casualty & Surety Co.,* 418 F. 2d 953 (8th Cir. 1969). See also *Risor v. Brown,* 244 Ark. 663, 426 S.W. 2d 810. It is abundantly clear that the chancery court left this issue undecided and that questions of fact were involved. Since this is so, we exercise our discretion to remand this case to the trial court for a determination of this issue on the cross-complaint against Gomer Jones.

In all other respects we adhere to our original opinion.